UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

MUNICH REINSURANCE AMERICA, INC.,

                  Petitioner,

     -v-

NATIONAL CASUALTY COMPANY,

                  Respondent.

-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO STAY THE LITIGATION/ ARBITRATION**

10 CV 5782

Respondent, National Casualty Company ("National Casualty"), through its attorneys, submits this Memorandum of Law in Support of its motion seeking an order to stay this litigation, stay the arbitration, or enjoin Petitioner, Munich Reinsurance America, Inc. ("Munich Re"), from engaging in any activity to prosecute this case and/or proceed with the arbitration process until resolution of the action by Employers Insurance Company of Wausau ("Wausau") against Munich Re, in which Wausau seeks disqualification of Munich Re's counsel in the arbitration and which is presently pending before Judge Castel (10 CV 3558).

Based on the arguments and authorities expressed herein, and upon all of the files, records and proceedings in this litigation and S.D.N.Y. Case No. 10 CV 3558, Wausau respectfully requests that the Court issue the requested stay or, in the alternative, the requested injunction.

## I.    <u>Preliminary Statement</u>

Generally, a motion to compel arbitration (9 U.S.C. § 4) requires that two questions be answered: (1) whether an agreement to arbitrate exists; and (2) whether the dispute(s) in question come(s) within the terms of that agreement to arbitrate. Similarly, a motion to appoint an umpire

(9 U.S.C. § 5) requires the determination of whether the parties' arbitration agreement provides a method for such selection. If it does, the Court is to order that the agreed upon method be followed, or, if it is determined that no method is provided or other circumstances warrant, the judicial selection of the umpire should be ordered.

While on its face Munich Re's petition to compel arbitration and appointment of an umpire appears relatively routine, where the Federal Arbitration Act is concerned, that is far from the case. In fact, under these circumstances, Munich Re's attempt to circumvent proper judicial processes warrants Court intervention.

In bringing this action, Munich Re's counsel, Rubin, Fiorella, & Friedman ("RFF"), seeks arbitration and appointment of an umpire. However, RFF has previously provided legal representation to Wausau in a reinsurance arbitration, and Wausau maintains that RFF's representation of Munich Re in the arbitration Munich Re hereby seeks to compel is a violation of Rule 1.9 of the New York Rules of Professional Conduct. Munich Re refused to replace RFF with non-conflicted counsel, and therefore, Wausau commenced an action before this Court (10 CV 3558 (PKC)) seeking RFF's disqualification. In that action, Judge Castel has declined to hear Munich Re's motion to compel the very same arbitration its seeks to compel by the institution of this action. Judge Castel also declined to entertain Munich Re's motion for the appointment of an umpire, again, for the very arbitration for which an appointment is sought here. It was only after Judge Castel made these determinations that Munich Re commenced the instant action.

Although Munich Re advised the Court of its belief that this action is "Related" to 10 CV 3558, Judge Castel declined to accept the assignment of this case as "Related," and thus, the Clerk's Office assigned it to this Court.

Munich Re's commencement of this action is merely a disingenuous attempt to obtain the very relief it was denied by Judge Castel.  As explained in detail below, these circumstances warrant a stay of this case and/or the arbitration, or for the Court to enjoin Munich Re from pursuing either or both until such time as the action addressing RFF's disqualification in 10 CV 3558 is determined.

## II.   Background

### A.   Rubin, Fiorella & Friedman, LLP's prior representation of Wausau

In or about January 2007, RFF was retained by Wausau to represent it in a reinsurance arbitration that had been demanded of Wausau by one of Wausau's reinsurers, Paladin Reinsurance Corporation ("*Paladin v Wausau* arbitration").[1]  The *Paladin v Wausau* arbitration was the derivative of a reinsurance arbitration Wausau had demanded of Wausau against Paladin and prosecuted to conclusion ("*Wausau v Paladin* arbitration").[2]   During RFF's legal representation of Wausau in the *Paladin v Wausau* arbitration, RFF acquired "Confidential Information," as that term is defined in Rule 1.6(a) of New York's Rules of Professional Conduct ("NYRPC") relating generally to substantive and procedural elements of reinsurance arbitration, and specifically as to the same categories with respect to both the *Wausau v Paladin* arbitration and *Paladin v Wausau* arbitration.[3]   RFF's legal representation of Wausau in the *Paladin v Wausau* arbitration continued until the arbitration panel's final award was confirmed by this Court in February 2008.

### B.   The Reinsurance Contracts

---

[1] A true and complete copy of Wausau's Responses to Munich Re's Requests for Production and Interrogatories, along with Wausau's 150+ Privilege Log regarding the *Paladin v Wausau* arbitration are submitted herewith and incorporated by reference as Exhibits "A", "B" and "C" to the Declaration of Mark C. Kareken (hereinafter "Kareken Dec."), also submitted herewith.
[2] *See* Wausau's Response to Munich Re's Interrogatories at General Objection #9 (Exhibit "B" to Kareken Dec.) and Response to Interrogatory No. 2, pp. 7-13 (Exhibit "B" to Kareken Dec.).
[3] *See* Wausau's Response to Munich Re's Interrogatories at Response to Interrogatory Nos. 2-7, pp. 7-19. Kareken Dec. Exhibit "B."

### 1.    The 77-82 Treaty

Munich Re, formerly known as American Re-Insurance Company, is a party to a reinsurance contract with other companies, including National Casualty and Wausau. This reinsurance contract, titled Excess of Loss Reinsurance Contract – No. 4575-0001, became effective July 1, 1977 and terminated at 12:01 a.m. July 1, 1982 (this reinsurance contract is hereinafter referred to as the "77-82 Treaty").[4]    The 77-82 Treaty contains an arbitration agreement (Article XIX, Arbitration), which Munich Re reproduces at ¶ 7 of its Petition.[5]

For present purposes, the pertinent paragraph of the 77-82 Treaty's arbitration agreement is paragraph (e), which reads:

> (e)    If more than one reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one party for purpose of this clause and communications shall be made by [Munich Re] to each of the reinsurers constituting the one party, provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this [77-82 Treaty] from several to joint.

### 2.    The 82-85 Treaty

Munich Re is also a party to a separate reinsurance contract with other companies, including Wausau, but not National Casualty. This reinsurance contract - First Casualty Facultative Excess of Loss Reinsurance Contract – No. 4575-0008, became effective July 1, 1982 and terminated at 12:01 a.m. July 1, 1985 (this reinsurance contract is hereinafter referred

---

[4] A true and complete copy of the 77-82 Treaty, which Munich Re did not append to its Petition, is submitted herewith and incorporated by reference as Exhibit "D" to Kareken Dec. *See*, e.g., the first page of Exhibit "D" to Kareken Dec., which happens to be the endorsement terminating the 77-82 Treaty, one of the things not included in the copy appended to Munich Re's Petition.
[5] Munich Re's reprinting of the arbitration agreement is accurate, except that the arbitration agreement consists of six paragraph (a-f), whereas Munich Re's reprinting contains to paragraph "d's," the second of which should be paragraph (e) and paragraph (e) should be paragraph (f).

to as the "82-85 Treaty").[6]  The 82-85 Treaty also contains an arbitration agreement (Article 20 – Arbitration).

### C.    Allianz's claim against Munich Re and their settlement[7]

Allianz Underwriters, Inc. ("Allianz") issued a number of general liability policies in favor of the Roman Catholic Archdiocese of Los Angeles and related entities ("ADLA").  In turn, Munich Re provided facultative reinsurance protection for some of Allianz's ADLA policies.

ADLA and the related entities were sued by numerous claimants alleging that they had been sexually abused or molested by clergy and/or religious personnel who were under the supervision of the ADLA.  Ultimately, a global resolution was reached by the abuse claimants, ADLA, Allianz and ADLA's other insurance carriers, whereby each participant was released in exchange for payments to the claimants totaling $660 million,  Allianz's share of which was $62 million.

Thereafter, Allianz presented to Munich a bill for $21 million under the facultative reinsurance agreements - the amount Allianz considered to be Munich Re's proper share of the $62 million settlement.  Munich Re disputed its obligation to pay $21 million.  In the end, Allianz agreed to accept, and Munich Re agreed to pay, $17.5 million for a full and complete resolution of the ADLA loss.

### D.    National Casualty and Wausau question their obligation to pay Munich Re's Allianz/ADLA loss presentations and therefore, the demand for arbitrations

---

[6] A true and complete copy of the 82-85 Treaty is submitted herewith and incorporated by reference as Exhibit "E" to Kareken Dec.  Munich Re did not submit a copy of the 82-85 Treaty with its Notice, Petition, Memorandum or Friedman Affidavit.
[7] The information contained in this section of the memorandum is derived from Munich Re's October 2008 billing to National Casualty under the 77-82 Treaty and from a March 3, 2009 letter written by the attorney assisting Munich Re with the Allianz/ADLA loss.  *See* Exhibits "F" and "G", respectively, to Kareken Dec.

Both National Casualty and Wausau exchanged communications with Munich Re regarding: (a) whether under the 77-82 Treaty, National Casualty was obligated to pay the loss presentation; and (2) whether under the 77-82 and 82-85 Treaties, Wausau was obligated to pay the loss presentation.[8]   Ultimately, National Casualty declined to pay Munich Re's Allianz/ADLA loss presentation under the 77-82 Treaty.[9]   Independent of National Casualty, Wausau also declined to pay the Munich Re Allianz/ADLA loss presentation under the 77-82 and 82-85 Treaties.[10]

Through correspondence from RFF dated April 8, 2010, Munich Re demanded arbitration against Wausau and National Casualty ("Demand").[11]   The Demand refers to the Allianz/ADLA claims and their "implicating the 1980 through 1984 treaty years inclusive," but cites only to Article XIX of the Excess of Loss Treaty (77-82 Treaty).[12]   The "Re" line of the Demand reads:

> Re:   Excess of Loss Reinsurance Contract between American Re-Insurance Company (n/k/a Munich RE) and Employers Insurance of Wausau/National Casualty – 1980-84 contract years, inclusive.

Lastly, the Demand states that: "[w]e [RFF] are serving this Demand upon you in our [RFF's] capacity as counsel for Munich RE."

In correspondence dated April 27, 2010, National Casualty responded to Munich Re's Demand.[13]   Therein, National Casualty: (1) acknowledged that the Demand was being made against National Casualty under the 77-82 Treaty; (2) disputed and denied Munich Re's entitlement to recovery; (3) made a full and complete reservation of all rights and defenses; and (4) confirmed the date by which an arbitrator for National Casualty must be named.

---

[8] *See* Exhibits "D" and "E" to Kareken Dec.
[9] *See* Exhibit "D" to Kareken Dec.
[10] *See* Exhibits "D" and "E" to Kareken Dec.
[11] *See* Exhibit 2 to the July 30, 2010 Affidavit of Bruce M. Friedman filed in this matter. *See* Exhibit "H" to Kareken Dec.
[12] As noted above, the arbitration agreement in the 82-85 Treaty is found in Article 20, not Article XIX.
[13] *See* Exhibit "I" to Kareken Dec.

The remainder of the correspondence addressed two other issues.   First, National Casualty advised that it was acceptable for Munich Re to include National Casualty and Wausau in a single arbitration under the 77-82 Treaty (hereinafter the "77-82 arbitration"), but unacceptable and improper for Munich Re to unilaterally attempt to include its arbitration with Wausau under the separate 82-85 Treaty (hereinafter the "82-85 arbitration") with the 77-82 arbitration; and (2) that RFF's representation of Munich Re against Wausau was a violation of Rule 1.9 of New York's Rules of Professional Conduct ("NYRPC 1.9").[14]

**E.      Wausau's commencement of a declaratory judgment action in the Southern District of New York seeking disqualification of RFF pursuant to Rule 1.9 of New York's Rules of Professional Conduct**

To protect and preserve its rights, on April 28, 2010, Wausau filed and served a complaint against Munich Re seeking a declaration that RFF's representation of Munich Re against Wausau in the 77-82 and 82-85 arbitrations constitutes a violation of Rule 1.9 of New York's Rules of Professional Conduct (hereinafter the "disqualification action").[15]   That litigation was commenced and is pending in the United States District Court for the Southern District of New York, under Case No. 10 Civ. 3558, and is assigned to the Honorable P. Kevin Castel.

On behalf of Munich Re, RFF responded to the three separate responses to the 77-82 and 82-85 arbitration demands provided by National Casualty and Wausau in a single correspondence dated April 29, 2010.[16]   In that correspondence, Munich Re attempted to restate the position of National Casualty and Wausau with respect to the impropriety of the

---

[14] Wausau sent similar correspondence - for both the 77-82 arbitration and for the 82-85 arbitration – setting forth the same points, including the objection to RFF's representation of Munich Re against Wausau and its improper unilateral attempt to consolidate the 77-82 and 82-85 arbitrations. *See* Exhibits "D" and "E" to Kareken Dec.
[15] A true and complete copy of the Complaint with Exhibits in the Disqualification Action are submitted herewith as Exhibit "J" to Kareken Dec. and incorporated herein by reference.
[16] A true and complete copy the Munich Re's April 29, 2010 correspondence is submitted herewith as Exhibit "K" to Kareken Dec. and incorporated herein by reference.

consolidation of the 77-82 and 82-85 arbitrations, encouraged National Casualty and Wausau to recognize the benefits of consolidation and admonished National Casualty and Wausau for not pursuing the consolidation in court.   Munich Re also rejected any notion that RFF's representation of Munich Re against Wausau constitutes a violation of NYRPC 1.9, stating that any action taken in furtherance of the issue would be frivolous and a frustration of the arbitration, declining to discuss the issue further.

On May 3, 2010, Munich Re sent correspondence in response to its service with the disqualification action.[17]   Munich Re asserted that the lawsuit was illegitimate and demanded that it be withdrawn immediately; and if it was not withdrawn, Munich Re would pursue sanctions.  Munich Re asserted that the disqualification issue was a matter for the arbitrators, not the court.  Wausau's May 6, 2010 response disputed Munich Re's May 3rd assertions and advised that the disqualification action would not be withdrawn.[18]

1.   **National Casualty and Wausau's appointment of an arbitrator for the 77-82 arbitration and Wausau's appointment of an arbitrator for the 82-85 arbitration**

To protect its rights under the 77-82 Treaty,[19] National Casualty conferred with Wausau[20] and agreed that it would appoint Spiro K. Bantis (a former executive with Gulf Insurance and now a partner with the law firm of London & Fischer in New York) as its arbitrator for the 77-82

---

[17] A true and complete copy the Munich Re's May 3, 2010 correspondence is submitted herewith as Exhibit "L" to Kareken Dec. and incorporated herein by reference.
[18] A true and complete copy the Wausau's May 6, 2010 correspondence is submitted herewith as Exhibit "M" to Kareken Dec. and incorporated herein by reference.
[19] Paragraph (b) of Article XIX of the 77-82 Treaty provides, in pertinent part:

> … If the respondent [National Casualty] fails to appoint its arbitrator within four weeks after being requested to do so by the claimant [Munich Re], the latter [Munich Re] shall also appoint the second arbitrator.

*See* Exhibit "D" to Kareken Dec.
[20] Recall that Paragraph (e) of Article XIX of the 77-82 Treaty requires that reinsurers involved in the same dispute under the contract "shall constitute and act as one party for purposes of this [arbitration] clause …".

arbitration.[21]  Consistent with Paragraph (e) of Article XIX of the 77-82 Treaty, Wausau also appointed Mr. Bantis as its arbitrator for the 77-82 arbitration.[22]  Wausau is the only respondent to the arbitration demanded by Munich Re under the 82-85 Treaty, and thus, is not constrained by Paragraph (e) of Article XIX in the 77-82 Treaty.  Therefore, pursuant to Article 20 of the 82-85 Treaty – Arbitration, Wausau appointed John D. Cole (former Maryland Casualty executive and now a partner with the law firm of Wiley Rein in Washington, D.C.) as its arbitrator for the 82-85 arbitration[23] in order to avoid "adverse selection" of its arbitrator by Munich Re.[24]

Munich Re responded to the appointment of a National Casualty/Wausau arbitrator for the 77-82 Arbitration and the appointment of an arbitrator for the Wausau 82-85 Arbitration in a letter dated May 13, 2010.[25]  Therein, Munich Re appointed Andrew Maneval (former Hartford Insurance executive and now a professional arbitrator/consultant) as its arbitrator for both the 77-82 and 82-85 arbitrations.  Munich Re's correspondence further insisted that selection of an umpire proceed and that:

> [it] objects to and rejects your appointment of two different arbitrators for the same disputed billing.  Pursuant to Article XIX(e) of the Excess of Loss Reinsurance Contract (hereinafter "Treaty"), "if more than one reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one party ..." (emphasis added)  There is only one contract (although multiple years implicated) and one underlying claim at issue here, thus there is only one dispute.  As we have previously stated, Munich Re regards your efforts to bifurcate these proceedings to be a strategic and intentional effort to increase the burden and cost to Munich Re in pursuit of its collection.

By correspondence dated May 17, 2010, Munich Re again claimed that Wausau's disqualification action was baseless, demanded that the action be discontinued and stated that barring a withdrawal by Wausau, Munich Re would seek leave from Judge Castel to file a

---

[21] *See* Exhibit "D" to Kareken Dec.
[22] *See* Exhibit "D" to Kareken Dec.
[23] *See* Exhibit "E" to Kareken Dec.
[24] Paragraph b. of Article 20 of the 82-85 Treaty contains the same language as set forth in footnote 16, *supra*.
[25] *See* Exhibit "N" to Kareken Dec.

motion to dismiss for failure to state a claim.  Wausau's May 20, 2010 response refuted Munich Re's assertions.[26]

2.    **Munich Re has attempted to proceed with the 82-85 arbitration by its arbitrator's suggestion to Wausau's arbitrator that umpire selection proceed; however, Wausau's arbitrator declined due to the pendency of the disqualification action**

By correspondence dated May 24, 2010, Wausau advised Munich Re that it had become aware that Munich Re's arbitrator for the 82-85 arbitration (Andrew Maneval) had contacted Wausau's arbitrator (John Cole) requesting that Messrs. Maneval and Cole proceed with umpire selection.[27]  Wausau was perplexed that Mr. Maneval (who was also appointed as Munich Re's arbitrator for the 77-82 arbitration) had not also contacted Mr. Bantis (Wausau and National Casualty's appointed arbitrator for the 77-82 arbitration).  Nonetheless, Wausau advised that in light of its firm conviction that RFF should have no involvement in the arbitrations whatsoever (including umpire selection), Wausau respectfully declined to proceed with umpire selection in the 82-85 and 77-82 arbitrations until the disqualification action was resolved.  Wausau suggested that Munich Re: (1) agree to hold umpire selection in abeyance pending the outcome of the disqualification action; (2) proceed with the arbitrations by replacing RFF; or (3) request that the Court in the disqualification action become involved in the umpire selection process.  As to its last suggestion, Wausau noted that the Southern District of New York had previously rejected a request for umpire selection in another case where the opposing party was seeking to disqualify Munich Re's counsel.  *Munich Reinsurance America, Inc. v. Ace Property & Casualty Insurance Company*, 500 F. Supp.2d 272 (S.D.N.Y. 2007).

Despite Wausau's May 24th correspondence, Mr. Maneval wrote to Mr. Cole on May 28, 2010, again requesting that they proceed with umpire selection in the 82-85 arbitration, and

---

[26] *See* Exhibit "O" to Kareken Dec.
[27] *See* Exhibit "P" to Kareken Dec.

Munich Re v National Casualty – 10CV5782
National Casualty Memo in Support of Stay

proposing Messrs. Jonathan Rosen, Larry Monin and Paul Tompson as Munich Re's nominees for umpire.[28]  That same day, Mr. Cole responded:

> As you well know from our prior conversation (and have no doubt discussed directly with Mr. Friedman [RFF]), the circumstances are that Wausau filed a formal challenge several weeks ago in the United States District Court, Southern District of New York, to the representation by Mr. Friedman [RFF] and the Rubin Fiorella & Friedman firm of Munich Re America in this matter.  In that view, Mark Kareken, counsel for Wausau in the captioned arbitration, has subsequently written to Mr. Friedman and set forth Wausau's position that it would be inappropriate for umpire selection to proceed given the involvement of Mr. Friedman in that process and the pendency of the referenced United States District Court [Disqualification Action].  I am not aware of Mr. Friedman's response to date, if any.
>
> Given these circumstances, I would suggest you consult further with counsel for Munich Re America.

Munich Re responded to Wausau's May 24th correspondence on June 8, 2010.[29]  Therein, Munich Re claimed that Wausau's disqualification action and position regarding the necessity for separate arbitrations were no more than tactics intended to achieve a discounted resolution of the allegedly owed billings that were outstanding, and that Munich Re would pursue the arbitrations to a final award.  Munich Re again asserted that the Court lacked jurisdiction over the disqualification issue - meaning that it belongs to the arbitrators - and advising that Munich Re would seek to compel arbitration and the appointment of an umpire by the court assigned to hear the disqualification action.

3.   **Munich Re seeks permission to file a motion pursuant to Rule 12(b)(6) and motions to compel arbitration and appointment of an umpire from a list of candidates provided by Munich Re, which are all opposed by Wausau and subsequently denied by the Court, which agrees with Wausau**

---

[28] *See* Exhibit "Q" to Kareken Dec.
[29] *See* Exhibit "R" to Kareken Dec.

On June 9, 2010, Munich Re filed a pre-motion conference request with Judge Castel.[30] Therein, Munich Re urged Judge Castel to consider its motion to dismiss for Wausau's alleged failure to state a claim upon which relief can be granted.  Munich Re further encouraged Judge Castel to permit Munich Re to pursue motions to compel arbitration and seeking to have Judge Castel appoint an umpire from a list of candidates provided by Munich Re.  Wausau opposed Munich Re's pre-motion conference request,[31] maintaining that its complaint satisfied the "plausibility" standard established by the United States Supreme Court in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1397 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  With respect to the motions to compel arbitration and judicial appointment of an umpire, Wausau explained that permitting the arbitration to proceed in light of the pending disqualification action would render Wausau's ethics challenge moot.  Further, as Wausau had already advised Munich Re, the Southern District had previously ruled that appointments of umpires will not proceed while judicial proceedings to disqualify the counsel of one of the parties to the arbitration was pending.  *Munich Re v. Ace*, 500 F. Supp.2d 272.  Finally, Wausau and National Casualty provided the unqualified assurance that they themselves, and their appointed arbitrators, would proceed with umpire selection in the two arbitrations as soon as the disqualification litigation was resolved.

The Rule 16 pretrial conference in the disqualification action was held on June 28, 2010.  At the conference, the Court ordered the parties to submit briefs on the question of whether the "amount in controversy" requirement for purposes of subject matter jurisdiction had been satisfied.[32]  The Court also determined at that time that it would not consider Munich Re's Rule 12(b)(6) motion to dismiss or Munich Re's motions to compel arbitration/appoint an umpire, and

---

[30] *See* Exhibit "S" to Kareken Dec.
[31] *See* Exhibit "T" to Kareken Dec.
[32] *See* Exhibit "U" to Kareken Dec.

Munich Re v National Casualty – 10CV5782
National Casualty Memo in Support of Stay

ordered that Munich Re's Answer be filed by July 12, 2010.  Munich Re's Answer and Counterclaims (seeking sanctions of Wausau and its counsel) was filed July 12, 2010.[33]

    **4.   Munich Re attempts to proceed with the 77-82 arbitration by having its arbitrator contact the National Casualty and Wausau arbitrator suggesting that, acting solely as National Casualty's arbitrator, he proceed with umpire selection.  National Casualty and Wausau's arbitrator declined because the 77-82 Treaty requires that National Casualty and Wausau act as one.  Therefore, National Casualty has no authority to act alone and will not proceed with umpire selection until the disqualification action is resolved**

By electronic correspondence dated July 20, 2010, Andrew Maneval, Munich Re's arbitrator in the 77-82 arbitration wrote to the arbitrator appointed by National Casualty and Wausau for that arbitration (Spiro Bantis).[34]  Based upon the fact that National Casualty was not a party to the disqualification action, and that the arbitrations had not been stayed, Mr. Maneval encouraged Mr. Bantis, solely as the arbitrator for National Casualty in the 77-82 arbitration, to proceed with umpire selection.  As he had done with Mr. Cole vis-à-vis the 82-85 arbitration, Mr. Maneval proposed Messrs. Rosen, Monin and Tompson as Munich Re's umpire candidates and solicited National Casualty's nominees.

Mr. Bantis responded to Mr. Maneval by electronic correspondence dated July 22, 2010, informing Mr. Maneval that he believed it inappropriate to proceed with umpire selection.[35]  Mr. Bantis disagreed with Mr. Maneval's suggestion that National Casualty and Munich Re could proceed with umpire selection in the 77-82 arbitration without Wausau.  To this point, Mr. Bantis referred Mr. Maneval to Paragraph (e) of Article XIX of the 77-82 Treaty which, in this case, requires National Casualty and Wausau to act as one party for purpose of the arbitration.  Mr. Bantis also advised that he was in disagreement with Mr. Maneval's view that there was a single

---

[33] *See* Exhibit "V" to Kareken Dec.
[34] *See* Exhibit "W" to Kareken Dec.
[35] *See* Exhibit "X" to Kareken Dec.

Munich Re v National Casualty – 10CV5782
National Casualty Memo in Support of Stay

arbitration because there were two separate reinsurance contracts involved (77-82 and 82-85), he had been appointed with respect to the 77-82 arbitration, and because Mr. Cole had been appointed Wausau's arbitrator for the 82-85 arbitration.   The consolidation of those separate arbitrations would only occur if the two separate panels that must first be constituted to hear each arbitration agreed to such.  Mr. Bantis concluded by indicating that he would not proceed with umpire selection until the disqualification action had been resolved.

> **F.    Munich Re commences this litigation, solely against National Casualty, seeking to compel the 77-82 arbitration and have an umpire appointed in the 77-82 arbitration from a list provided by Munich Re, and despite Munich Re's disclosure that this action is "Related" to the disqualification action, Judge Castel declines to accept this litigation as "Related" and the case is assigned to Your Honor**

On July 30, 2010, Munich Re filed this action solely against National Casualty seeking to compel arbitration and for judicial appointment of an umpire from a list of candidates provided by Munich Re (hereinafter the "NCC Case").  With its filing, Munich Re properly advised the Court that the case it was commencing is "Related" to the already pending disqualification action.  For reasons unknown to National Casualty or Wausau, the Court presiding over the disqualification action declined to accept the National Casualty case as "Related" to the disqualification action, despite the involvement of one of the same arbitrations at issue herein. Thus, this case has been assigned to the Honorable Sidney H. Stein.[36]

Munich Re requested that National Casualty waive service of the NCC Case.[37]  Noting that it disagreed with the propriety of Munich Re's action, and that it would oppose same, National Casualty granted the waiver of service.[38]

## III.    Argument

---

[36] *See* Exhibit "Y" to Kareken Dec. – August 5, 2010 Notice of Assignment Docket Number: 10 CV 5782.
[37] *See* Exhibit "Z" to Kareken Dec.
[38] *See* Exhibit "AA" to Kareken Dec.

Munich Re v National Casualty – 10CV5782
National Casualty Memo in Support of Stay

**A.     The Court has the inherent authority to stay the National Casualty case and doing so is warranted here**

Long ago, the United States Supreme Court recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis, et al. v. North American Co.*, 299 U.S. 248, 254-255 (1936). The goal in undertaking this balancing is to avoid prejudice. *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. EPA*, 630 F. Supp.2d 295, 304 (S.D.N.Y. 2009)(citing *LaSala v Needham & Co., Inc.*, 399 F. Supp.2d 421, 427 (S.D.N.Y. 2005)(*quoting Kappel*, 914 F. Supp. at 1058)).

In determining whether to issue a stay, the following factors are relevant: (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation, as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Tradewinds Airlines, Inc. v. Soros, et al.*, 08 Civ. 5901 (JFK), 2009 U.S. Dist. Lexis 13867 (S.D.N.Y., Feb. 23, 2009)(citing *Kappel v Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)(*quoting Volmar Distribs. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

By bringing this action, at the heart of which are the billings Munich Re issued to Wausau and National Casualty in October 2008, Munich Re seeks to compel and appoint an umpire for the 77-82 arbitration. Despite the fact that in July 2009, and again in November 2009, National Casualty and Wausau both denied their obligations to pay the billings, Munich Re waited until April 2010 – 17 months after sending its billing - to demand arbitration. When it

finally did demand arbitration, Munich Re did so by selecting RFF as its counsel, despite having to have had knowledge of the existence of a potential conflict of interest created by the choice of counsel, i.e. that RFF had represented Wausau in a prior reinsurance arbitration commenced by Paladin Reinsurance Corporation ("Paladin") against Wausau ("*Paladin v Wausau* arbitration") which resulted from an arbitration Wausau had commenced and prevailed in against Paladin ("*Wausau v Paladin* arbitration"). Were it more interested in pursuing a resolution in the arbitration, Munich Re could have easily replaced RFF when confronted with Wausau's objection to Munich Re's use of RFF. Instead, Munich Re has chosen to insist on its right to use RFF to prosecute an arbitration against Wausau, to the point of asserting counterclaims for sanctions against both Wausau and its counsel.

Moreover, and perhaps more importantly, Munich Re is now attempting to do through the back door (the National Casualty case) what Judge Castel would not allow it to do through the front door in the disqualification action. Munich Re's inability to proceed through the front door is predicated on two sound principles with which Judge Castel found no room for equivocation. First, allowing the 77-82 arbitration to proceed before the resolution of the disqualification action effectively renders the relief to which Judge Castel has already recognized that Wausau is entitled, moot, and it would constitute a complete waste of time and resources of both the parties and Judge Castel. Second, Judge Castel recognized that the Southern District has adhered to the rule that issues of attorney disqualification are for the courts to decide, and that such issues take precedence over compelling arbitration and appointing umpires in the underlying arbitration giving rise to the disqualification dispute – a rule for which Munich Re was responsible for establishing in this District. *Munich Re v Ace*, 500 F. Supp.2d 272 (S.D.N.Y. 2007).

Here, in addition to attempting to render Wausau's entitlement to pursue disqualification all for naught, Munich Re's tactics have placed National Casualty in an untenable position - creating a conflict between Wausau and National Casualty, as both are contractually bound to act as one party with respect to the 77-82 arbitration. As they were contractually bound to do, Wausau and National Casualty selected a single arbitrator, Mr. Bantis, in that arbitration. There is no justification for rendering Wausau's efforts in that arbitration moot by forcing National Casualty to breach the very terms of the 77-82 Treaty that it, Wausau and Munich re executed.

Clearly, the 77-82 arbitration in issue here is precisely the same arbitration in which Wausau seeks removal of RFF in the disqualification action. Were this Court to grant Munich Re's request herein, it would also be granting the very relief that Judge Castel - for the sound reasons given above - refused to provide. Moreover, should this Court grant the relief requested by Munich Re, such a determination would render the disqualification action moot, meaningless and a waste of the time and resources already invested by the parties and Judge Castel.

For seemingly obvious reasons, Munich Re fails to mention any of the considerable prejudices its chosen course of conduct will have upon an action already pending. This blatant disregard for such serious implications should not be rewarded. The balance of prejudices and the Court's inherent authority warrant a *Landis* stay of the National Casualty case until such time as the disqualification action has been resolved.

**B.**   **Alternatively, the Court could exercise its authority under the All Writs Act and stay the National Casualty case**

As an alternative to a *Landis* stay, the Court could stay the National Casualty case pursuant to its authority under the All Writs Act. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "This

Court has repeatedly recognized that the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate **to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained ....**" *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977)(Emphasis added).

Here, by rejecting Munich Re's request to bring a Rule 12(b)(6) motion, Judge Castel has already concluded that Wausau's disqualification action states a claim for which relief can be granted. As a result, Judge Castel has effectively foreclosed Munich Re's proposed motions to compel and for judicial appointment of umpires. Lastly, Judge Castel recently concluded that the Court possesses subject matter jurisdiction over the disqualification action. If allowed to proceed, Munich Re's National Casualty case would frustrate all of the foregoing determinations made by Judge Castel in the exercise of his jurisdiction over the disqualification action. An All Writs Act stay of the National Casualty case is necessary and appropriate to achieve the ends of justice. *Adams v. United State ex rel. McCann*, 317 U.S. 269, 273 (1942).

**C.** **Alternatively, the Court could: (1) stay the 77-82 arbitration or (2) enjoin Munich Re from proceeding with the National Casualty case or the 77-82 arbitration**

**1.** **Appropriate circumstances exist for a stay of the 77-82 arbitration**

Second Circuit precedent recognizes that a district court has the power to stay arbitration proceedings. *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 (2d 1996), *abrogated on other grounds*, *Vaden v. Discover Bank*, 129 S. Ct. 1262 (2009); *Oppenheimer & Co., Inc. v. Deutsche Bank AG*, 09 Civ. 8154 (LAP), 2009 U.S. Dist. Lexis 117369 *5-8 (S.D.N.Y., Dec. 16, 2009); *United States v. Eberhard*, 03 Cr. 562 (RWS), 2004 U.S. Dist. Lexis 5029 *8-12 (S.D.N.Y., March 20, 2004); *Satcom International Group PLC. v. Orbcomm International Partners, L.P.*, 49 F. Supp.2d 331, 342 (S.D.N.Y. 1999); *Prudential Securities, Inc. v. American*

*Capital Corp.*, 96-CV-440 (TJM), 1996 U.S. Dist. Lexis 7196 *12-14 (N.D.N.Y., May 15, 1996); *L.F. Rothschild & Co. v. Katz, et al.*, 702 F. Supp. 464, 467-468 (S.D.N.Y. 1988).

Here, the appropriate circumstances for a stay of the 77-82 arbitration are no different than the sound reasons which support the entry of either a *Landis* or *All Writs Act* stay.

> **2.  Enjoining Munich Re from proceeding with the NCC Case and/or the 77-82 arbitration is justified under the this Circuit's standard for the issuance of a preliminary injunction**

In the Second Circuit, a preliminary injunction will be granted if the moving party can demonstrate: irreparable harm and either: (1) a likelihood of success on the merits; or (2) the existence of sufficiently serious questions going to the merits to make them fair ground for litigation, and a balance of hardships tipping decidedly toward the moving party. *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Limited*, 598 F.3d 30, 35 (2d Cir. 2010).

> **a.  Irreparable harm will result to National Casualty and Wausau if the 77-82 arbitration is compelled to proceed and an umpire appointed before the disqualification action is concluded**

Wausau and National Casualty are, by contract, co-respondents to the 77-82 arbitration demanded by Munich Re. Wausau, a former client of RFF commenced an action against Munich Re in this Court seeking a declaration that RFF's representation of Munich Re against Wausau in the 77-82 arbitration is a violation of NYRPC 1.9. In the disqualification action, Judge Castel declined to entertain motions by Munich Re to compel proceeding with the 77-82 arbitration and for judicial selection of an umpire for that arbitration. Now, Munich Re seeks to compel the 77-82 arbitration and to obtain judicial selection of an umpire for that same arbitration in this Court.

If Munich Re is not enjoined from further pursuit of the National Casualty case until the disqualification action is resolved, the irreparable harm to National Casualty and Wausau is

obvious. Judge Castel has before him the issue of whether any participation by RFF in the 77-82 arbitration is a violation of NYRPC 1.9. Should this Court grant Munich Re's request to select an umpire and compel proceeding with the 77-82 arbitration, RFF would be involved in the 77-82 arbitration, thereby rendering moot the question before Judge Castel. That is a bell that could not be un-rung, as there is no adequate remedy at law to correct the harm that would be done by RFF's involvement in the 77-82 arbitration. For example, RFF's disclosure/use of Wausau's "Confidential Information" (NYRPC 1.6) to Munich Re's benefit in violation of NYRPC 1.9 could not be undone, even assuming that the Court possessed the authority to order the 77-82 arbitration to re-commence. This disadvantage to National Casualty and Wausau is not a monetarily compensable wrong and no amount of remuneration could repair the harm that would be inflicted. There is no way to measure the continuing harm done from Munich Re's ability to profit from "Confidential Information" it has obtained – Munich Re's memory can not be erased.

> **b.** **There is a substantial likelihood that RFF will be disqualified from representing Munich Re in both the 77-82 and 82-85 arbitrations**

Munich Re has admitted, as it must, that it represented Wausau as legal counsel in a reinsurance arbitration in which Paladin pursued the recovery of monies previously paid to Wausau. Munich Re has further admitted, as it must, that its interests in the 77-82 and 82-85 arbitrations, in which it proposes to be represented by RFF, are materially adverse to Wausau's interests. Thus, Munich Re has already conceded two of the three elements required to demonstrate a violation of NYRPC 1.9(a).

The third element necessary to prove a Rule 1.9(a) violation is a demonstration that the matter in which RFF represented Wausau is "substantially related" to the 77-82 and 82-85 arbitrations. This element makes the presumption that what RFF learned from Wausau during its

prior representation will be advantageous to Munich Re in the 77-82 and 72-85 arbitrations.  For example, Wausau can demonstrate that it disclosed, discussed and analyzed its likes, dislikes and assessments of numerous arbitrators and umpires (both those proposed to be used and nominated by Wausau and those named and nominated by its opponents).  It is not difficult to imagine how, where selecting arbitrators and umpires in the 77-82 and 82-85 arbitrations are concerned, RFF's knowledge of this information from Wausau will be valuable to Munich Re and detrimental to Wausau.  Similarly, Wausau's views and strategies for dealing with potential consolidation of separate arbitrations was disclosed, discussed and analyzed with RFF during the prior representation.  Munich Re has made a significant point of the fact that it wants the 77-82 and 82-85 arbitrations consolidated.  RFF's knowledge of Wausau's confidentially disclosed views and strategies on consolidation would also be valuable to Munich Re and detrimental to Wausau.  There is a substantial likelihood that Wausau will prevail in demonstrating that the *Paladin v Wausau* arbitration is substantially related to the 77-82 and 82-85 arbitrations, thus requiring RFF's disqualification.

While Munich Re has yet to admit that Wausau shared a wealth of "Confidential Information" (NYRPC 1.6) with RFF during the course of the prior representation, this is a point which ultimately, it will be unable to deny.  Wausau's responses to Munich Re's document requests and interrogatories in the disqualification action, as well as Wausau's 170+ page privilege log, leave no doubt regarding the transfer/exchange of "Confidential Information" between Wausau and RFF.  NYRPC 1.9(c) forbids RFF from using Wausau's "Confidential Information" to Wausau's disadvantage in a subsequent adverse representation, such as the 77-82 and 82-85 arbitrations.  As set forth above, there are numerous examples of the types of "Confidential Information" disclosed/exchanged between Wausau and RFF that RFF could use

to Wausau's disadvantage and to Munich Re's advantage in the 77-82 and 82-85 arbitrations. There is a substantial likelihood that Wausau will prevail in demonstrating a violation of NYRPC 1.9(c), thus requiring that RFF be disqualified.

### c. The National Casualty case and disqualification action present sufficiently serious questions, and the balance of hardships tip decidedly in favor of National Casualty

Even assuming, *arguendo*, that a likelihood of success on the merits could not be demonstrated by Wausau, Munich Re should still be enjoined from pursuing either the National Casualty case and/or the 77-82 arbitration because the connection between the National Casualty case and the disqualification action present sufficiently serious questions and, as has already been demonstrated, the balance of hardships tips decidedly in National Casualty's favor.

Guarding and preserving the integrity of the legal profession, both for the benefit of the profession and the public, is a duty and responsibility that all courts appropriately and rightfully take seriously. "These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage." *Emle Industries, Inc. v. Glen Raven Mills, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973).

Whether a lawyer or law firm should be allowed to take up representation of a client against a former client such that NYRPC 1.9 may be violated - meaning the lawyer/law firm should have no involvement in the new matter - is a serious question that, for the host of reasons explained above, must be determined before the new matter proceeds. Any other approach would render NYRPC 1.9 useless and meaningless.

## IV.  **Conclusion**

A stay of the National Casualty case, a stay of the 77-82 arbitration, or an injunction preventing Munich Re from pursuing the National Casualty case and/or the 77-82 arbitration are all warranted under the circumstances.  Such a stay or injunction need be no longer than is needed for the resolution of the disqualification action.