UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

MUNICH REINSURANCE AMERICA,
INC.,

                     Petitioner,

          v.

NATIONAL CASUALTY COMPANY,

                   Respondent.

-------------------------------------------------------X

Civil Action No.: 10 CV 5782

## MEMORANDUM OF LAW IN OPPOSITION TO NATIONAL CASUALTY'S MOTION FOR STAY

Bruce M. Friedman, Esq.
Crystal Monahan, Esq.
Of Counsel

RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue
New York, New York 10017
(212) 953-2381
Attorneys for Petitioner
MUNICH   REINSURANCE   AMERICA,
INC.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT AND RECITATION OF FACTS ...................... 1

POINT I:    THE POWER OF THE DISTRICT COURT TO STAY ARBITRATION IS LIMITED ...................................................... 4

    1.   That Reinsurers Shall Act As One Is Not Recognized Basis For A Stay of Arbitration ........................................................ 6

    2.   The Action Before Judge Castel Does Not Involve Or Relate to National Casualty ........................................................ 9

POINT II:   THERE IS NO BASIS TO ENJOIN THIS LITIGATION OR THE UNDERLYING ARBITRATION ................................................. 12

    1.   National Casualty Cannot Show Irreparable Harm If Compelled To Proceed To Arbitration ...................................................... 14

    2.   National Casualty Does Not Even Attempt To Demonstrate Its Likelihood of Success ......................................................... 15

        A.    Likelihood Of Success In Its Disqualification Action Is Remote ...... 16

CONCLUSION ......................................................... 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                  :

MUNICH REINSURANCE AMERICA,    :     10 CV 5782
INC.,                                  :
                                  :     **MEMORANDUM OF LAW IN**
              Petitioner,    :     **OPPOSITION TO NATIONAL**
                                  :     **CASUALTY'S MOTION FOR STAY**
      v.                           :
                                  :

NATIONAL CASUALTY COMPANY,     :
                                  :
             Respondent.   :
-----------------------------------------------------X

       Munich Reinsurance America, Inc. ("MRA") respectfully submits this Memorandum in

Opposition to National Casualty Company's ("National Casualty") motion to stay this litigation and

the underlying arbitration, or in the alternative, enjoining MRA from prosecuting the arbitration

pending resolution of a disqualification (of counsel) action to which it is not a party and the outcome

of which will in no way affect National Casualty's obligation to submit to arbitration with MRA.

### Preliminary Statement And Recitation of Facts

       National Casualty does not establish, much less assert, that it is not required to submit to

arbitration as demanded by MRA.  More significantly, National Casualty fails to demonstrate that

there is a legal basis for a federal court to stay MRA's arbitration.  Instead, National Casualty offers

a largely irrelevant, and partially incorrect, recitation of the history of the parties' relationship,

including a flawed discussion of the disqualification action between MRA and Employers Insurance

Company of Wausau ("Wausau"), styled *Employers Ins. Co. Of Wausau v. Munich Reinsurance

America, Inc.*, Index. No. 10-cv-3558 (PKC) (*"Wausau v. Munich Re"*), currently pending in this

district before the Honorable P. Kevin Castel, to urge this Court to deprive MRA of its undisputed

right to a speedy and efficient resolution of its claim for reinsurance recoverables -- in an arbitration that was demanded on April 8, 2010, almost six months ago. *See* Friedman Aff., Ex. 1.

Stripped of its editorial and self-serving commentary, and apart from a few inaccuracies and exaggerations -- e.g., that Judge Castel denied MRA's motion to compel Wausau to submit to arbitration -- National Casualty's account of the "Background" (Resp. Mem., pp. 3-14) is essentially correct. MRA will provide additional context below.

National Casualty reinsured MRA pursuant to a reinsurance contract which contained a binding arbitration provision. A National Casualty affiliated company -- Wausau -- also reinsured MRA pursuant to the same contract. MRA itself is a reinsurance company, and provided reinsurance to Allianz Underwriters, Inc. ("Allianz") in respect of Allianz' insurance policies issued to the Roman Catholic Archdiocese of Los Angeles ("ADLA"). MRA paid Allianz for its share of Allianz' settlement of sexual abuse cases asserted against ADLA, and in turn, billed all of its retrocessionaires,[1] including National Casualty and Wausau, for their shares of MRA's settlement payment. All of MRA's retrocessionaires, except National Casualty and Wausau, paid their shares of MRA's billings. *See* Friedman Aff., ¶ 14.

MRA then engaged in dialogue with, and provided additional information and documents to, National Casualty and Wausau, over an extended period of time, in the hope of convincing National Casualty and Wausau to honor their reinsurance commitments and in an effort to avoid the expense of costly collection proceedings, given the relatively small sums at issue.[2] The amounts due

---

[1] A "retrocessionaire" is a reinsurer of a reinsurer.

[2] National Casualty states that a significant amount of time elapsed between MRA's billings and its initiation of arbitration. National Casualty is obviously attempting to convince the Court that MRA would not be prejudiced if the arbitration were deferred until after Wausau's disqualification

from National Casualty and Wausau are $133,000 and $520,409.74, respectively. Despite MRA's best efforts, National Casualty and Wausau refused to pay, thereby leaving MRA with no alternative but to demand arbitration against those companies.

After the arbitration demand was served on April 8, 2010, National Casualty and Wausau commenced their strategic plan to derail the process and to ratchet up MRA's collection costs. They objected to "consolidation" of the dispute into a single proceeding, despite the fact that all of the billings to each contract[3] involves the same settlement, the exact same underlying claims and claim facts, and presents identical legal and contract interpretation issues. Wausau also maintained that it would be improper for Rubin, Fiorella & Friedman LLP ("RFF") to represent MRA because RFF had previously represented Wausau in a prior -- and completely unrelated -- arbitration. One day after requesting that RFF withdraw from its representation of MRA (and without waiting for MRA's/RFF's response), Wausau commenced an action in this Court seeking to disqualify RFF from representing MRA in the arbitration. National Casualty is not a party to that disqualification action. RFF has never represented National Casualty in any matter. *See* Friedman Aff., ¶ 15.

When it became apparent that the disqualification action would have to proceed through discovery, MRA sought to move forward with its arbitration against National Casualty. The parties had already appointed their arbitrators, leaving only an umpire to be selected. However, National

---

action is decided. The truth, however, is that the lapse of time was due to the continuing dialogue between the parties in order to ward off a potential dispute. Moreover, as National Casualty well knows, the business of reinsurance involves long-term relationships, and companies always attempt to resolve issues amicably first, so as to avoid having to resort to the arbitration process.

[3] National Casualty claims that the initial reinsurance contract covered the period 1977 through 1982, and that a new contract covered the period 1982 though 1985. For all intents and purposes, the contracts are the same and provide the same reinsurance coverage to MRA.

Casualty's arbitrator refused to proceed with the umpire selection process as specified in the arbitration provision contained in the reinsurance contract. His position, obviously orchestrated by National Casualty, was that the MRA - National Casualty arbitration should await the outcome of Wausau's disqualification action.

Consequently, on or about August 5, 2010, MRA was required to file a Petition to Compel Arbitration against National Casualty in this Court. *See* Docket No. 1. MRA requested that Judge Castel, who is presiding over the disqualification action, accept MRA's Petition as a "Related Case." However, Judge Castel found that it was not related to the disqualification action. *See* Friedman Aff., Ex. 6.

**POINT I**

**THE POWER OF THE DISTRICT**
**COURT TO STAY ARBITRATION IS LIMITED**

National Casualty does not set forth either a legal or factual basis to support a stay of arbitration. To the contrary, National Casualty appears to concede that grounds exist to compel National Casualty to submit to arbitration and for the Court to appoint an umpire.[4] (Resp. Mem. at 1, 2). The Federal Arbitration Act, at 9 U.S.C. § 4, sets forth a very simple and restrictive standard for a federal court to enter an order compelling arbitration:

---

[4] Accompanying MRA's Petition to Compel Arbitration and for the Appointment of an Umpire is a Memorandum supporting MRA's right to have this Court compel National Casualty to proceed forthwith with the arbitration demanded against it. *See* Docket #1. Although characterized as a Notice of Motion, National Casualty's stay application is actually a cross-motion. The attention of the Court is respectfully directed to the motion papers filed by MRA for a recitation of the facts relevant to these competing motions. *See* Docket #1, Petition to Compel Arbitration and Appoint Neutral Umpire ¶¶ 6-18, Memorandum of Law in Support of Petition to Compel Arbitration and Appoint Neutral Umpire, pp. 2-5.

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Case law does not superimpose any additional requirements. In fact, the federal courts recognize and accept the limitation of their authority to decline to order arbitration. *See Prudential Lines, Inc., v. Exxon Corp.*, 704 F.2d 59, 65-67 (2d Cir. 1983); *Scone Investments, L.P., v. American Third Market Corp.*, 992 F.Supp 378, 380 (S.D.N.Y. 1998).

Moreover, it is far from certain that this court even has the authority to provide the relief National Casualty has requested. First, all of the cases National Casualty cites concerning its request for a *Landis* stay address a request to stay a litigation. National Casualty has not cited a single case in which a court stayed an arbitration, or even a litigation seeking to compel arbitration. Second, recent Southern District cases, including some of those cited by National Casualty, question whether the court has the authority to stay an arbitration, or a litigation seeking to compel arbitration, pursuant to the All Writs Act. *See Oppenheimer & Co., Inc., v. Deutsche Bank AG*, 2009 WL 4884158, at *3-4 (S.D.N.Y. Dec. 16, 2009) (Declining to stay arbitration because the Federal Arbitration Act divests the court of jurisdiction over issues for which a party has validly requested arbitration, and none of the issues to be decided by the arbitrators were within the court's jurisdiction.); *Ghassabian v. Hematian*, 2008 WL 3982885, at *2 (S.D.N.Y. Aug. 27, 2008) (Dismissing petition to stay arbitration because federal statutes do not create such a cause of action

and "the FAA does not provide for petitions . . . brought by the party seeking to stay arbitration.");
*Stevenson v. Tyco Int'l (US), Inc.*, 2006 WL 2827635, at \*9-10 (S.D.N.Y. Sept. 29, 2006) (Declining
to stay arbitration because arbitration was mandated by the contract and "federal courts do not have
jurisdiction over arbitrable claims where the parties have requested arbitration.").

Even if this Court has such authority, National Casualty has failed, for the reasons set forth
below, to establish the elements necessary to show a need for a stay. Lacking statutory or case
authority to support its request for a stay, National Casualty raises two curious arguments: first, that
to require National Casualty to proceed to arbitration alone would be in violation of the reinsurance
contract, and second, that Judge Castel has somehow considered and resolved this issue. Each of
these assertions is without merit. MRA shall address each below.

## 1.    That Reinsurers Shall Act As One Is Not Recognized Basis For A Stay of Arbitration

National Casualty recognizes that there is no legal basis to prevent this Court from
compelling National Casualty to submit to arbitration. Groping for an excuse to refuse to proceed
to arbitration, National Casualty contends that, to compel National Casualty to submit to arbitration
without Wausau would require National Casualty to breach the contract's requirement that all
disputing reinsurers act as one in the arbitration. This argument is as preposterous as it is
inconsistent.

It is well-settled that issues relating to consolidation of arbitrations are for the arbitrators to
decide. *See Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 452-453 (2003) ("[T]he relevant
question here is what kind of arbitration proceeding the parties agreed to ... Arbitrators are well
situated to answer that question."); *Vaughn v. Leeds, Morelli & Brown, P.C.*, 315 Fed. Appx. 327,

329, 2009 WL 690024, at *1 (2d Cir. Mar. 16, 2009); *Allstate Ins. Co. v. Global Reinsurance Corp. U.S. Branch*, 2006 WL 2289999, at *1 (S.D.N.Y. Aug. 8, 2006)("Petitioner wants to require an arbitration panel to determine whether the two disputes shall be consolidated. Other Circuits have decided this precise issue in Petitioner's favor."); *Blimpie Int'l, Inc., v. Blimpie of the Keys*, 371 F.Supp.2d 469, 473 (S.D.N.Y. 2005)("Like the question of class arbitration in *Green Tree*, the question of consolidated arbitration here concerns the nature of the arbitration proceeding agreed to, not whether the parties agreed to arbitrate. Indeed, consolidation is a procedural issue, which grows out of the parties' dispute, and therefore, presumptively falls to the arbitrator."(internal citations omitted)). *See also* Daniel J. Neppl, *Arbitrators, Not Courts, Decide Whether to Allow Consolidated Reinsurance Arbitrations*, ARIAS-US Quarterly, Third Quarter 2007, at 2.

The Court's inquiry is limited to determining two issues: 1) is there an agreement to arbitrate?; and 2) does the dispute in question come within the terms of that agreement to arbitrate? *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993); *Scone*, 992 F.Supp. at 380. If those two questions are answered in the affirmative, the Court must compel arbitration. *See Progressive*, 991 F.2d at 45 ("Thus, where a court is satisfied that a dispute before it is arbitrable, it must stay proceedings and order the parties to proceed to arbitration."). National Casualty is not claiming that there is no agreement to arbitrate, or that MRA's claim does not fall within the scope of the agreement to arbitrate. Therefore, this Court must compel National Casualty to submit to arbitration.

Further, since National Casualty is not basing its challenge on either of these two grounds, the Court does not have the authority to attempt to interpret the parties' contract. It is for the

arbitrators to decide whether MRA may proceed separately against National Casualty in the arbitration.

If National Casualty chooses to bring up before the arbitrators the issue of consolidation based upon the contract provision upon which it purportedly relies,[5] it has that prerogative. However, it is hardly likely that a panel will accept the "we want to wait for Wausau" argument. National Casualty and its affiliate Wausau deliberately placed themselves in the positions in which they find themselves.  Wausau made a conscious, and strategic, decision to file a frivolous disqualification action -- something Wausau has a penchant to do.[6]  It is equally unlikely that a contract provision which is clearly designed to ease the cedent's burden (here, MRA) of pursuing collection against multiple reinsurers for the same claim or claims would be construed in a manner that would reward recalcitrant reinsurers who simply refuse to cooperate and decline to participate in the arbitration -- just as Wausau has done, by trumping up a claim for disqualification.

---

[5] A clause in the arbitration provision provides:

 (e)  If more than one reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one party for purpose of this clause and communications shall be made by [MRA] to each of the reinsurers constituting the one party, provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, not be construed as changing the liability of the reinsurers under the terms of this Agreement from several to joint.

[6] In a separate action filed in the District Court for the District of Columbia, Wausau is seeking to disqualify another law firm -- McDermott Will & Emery LLP ("McDermott Firm") -- from representing Allianz in an arbitration that Allianz demanded against Wausau.  Apparently Wausau also refused to pay Allianz for its share of the Allianz' ADLA settlement.  That disqualification action is also similar to this action before Judge Castel in that the McDermott Firm's representation of Wausau is not current.  A copy of the McDermott Firm's Motion to Dismiss is attached as Exhibit "7" to the accompanying Declaration of Bruce Friedman, Esq. (Friedman Aff.) in Opposition to Defendant's Motion to Stay or for Preliminary Injunction.

This Court also should not lose sight of the inherently inconsistent position that National Casualty and its affiliate Wausau are asserting. While National Casualty claims it must proceed with Wausau "as one" in "the 77-82 arbitration," Wausau has purposefully attempted to make a consolidated arbitration with the "82-85 arbitration" impossible by designating two different arbitrators.[7] MRA sought to arbitrate the entire dispute in a single proceeding, but National Casualty and Wausau have done their very best to frustrate that desire -- despite the efficiencies to be achieved by proceeding in a single arbitration and the fact that the amounts at issue are nominal.

These companies' strategy is not difficult to discern: by erecting procedural roadblocks to frustrate the progression of the arbitration -- i.e., Wausau's disqualification action, Wausau's and National Casualty's joint decision to select different arbitrators, and National Casualty's frivolous motion to stay arbitration -- and by using an in-house attorney to keep their costs down while causing MRA to incur significant and unnecessary legal fees they are attempting to place MRA into a situation where MRA is forced to either abandon its meritorious claim or accept an undeserved discount. At some point, unfortunately, MRA's collection cost may exceed the total amounts at issue. For this reason, MRA will be asking this Court and Judge Castel to award sanctions against National Casualty and Wausau.

## 2.     The Action Before Judge Castel Does Not Involve Or Relate to National Casualty

Although MRA requested that Judge Castel accept its Petition to Compel as a "Related Case," Judge Castel declined to do so. In refusing to accept this case, Judge Castel stated

---

[7] Despite National Casualty's suggestion to the contrary, there is no reason to distinguish the 1977-1982 contract from the 1982-1985 contract. The MRA billings to both contracts are based on the exact same methodology, and the billings relate to the same underlying claims and the same single settlement.

"CASE DECLINED AS NOT RELATED."

(Electronic Filing Notice, dated August 5, 2010). *See* Friedman Aff., Ex. 6.

National Casualty attributes to Judge Castel certain "determinations" (Resp. Mem. at pp. 12, 16, 18) which simply are figments of National Casualty's imagination. Judge Castel made no such "determinations," and National Casualty presents no evidence of them.

MRA did submit a pre-motion letter to Judge Castel seeking permission to file a motion to dismiss and to compel arbitration. *See* Friedman Aff, Ex. 3. Judge Castel deferred MRA's request to a forthcoming Initial Conference that was scheduled to proceed on June 28, 2010. *See* Friedman Aff., Ex. 4.

At the conference, Judge Castel directed his inquiries toward Wausau's attorneys. His initial focus was on the apparent absence of merit to Wausau's disqualification action, and then, whether he had subject matter jurisdiction over the dispute. There was no discussion at all about a motion to compel arbitration. *See* Friedman Aff., ¶¶ 7-8.

When Judge Castel inquired of MRA's counsel what they had to add to the discussion, MRA's counsel announced a desire to proceed with a motion to dismiss pursuant to Rule 12(b). Announcing that in ruling on such a motion he would be limited to assessing the sufficiency of the four corners of the complaint, Judge Castel was of the opinion that discovery would have to proceed and that MRA could then file its motion for summary judgment.[8] *See* Friedman Aff., ¶ 7.

The fact that the disqualification action -- however frivolous -- is going to be resolved before Wausau will be compelled to proceed to arbitration is of no legal significance to whether or when

---

[8] MRA does not contend that Judge Castel would have granted permission to proceed with a motion to compel if the issue had arisen at the Initial Conference.

National Casualty must submit to arbitration. National Casualty's obligation to MRA is separate and independent of Wausau's obligation. Even if RFF were to be disqualified from representing MRA against Wausau -- a highly dubious prospect -- that would not prevent RFF from representing MRA in its arbitration against National Casualty. In no way would this Court's decision to compel National Casualty to submit to arbitration render "moot the question before Judge Castel" (Resp. Mem., at 20).

It might also be observed that since National Casualty and Wausau are represented by the same in-house attorney, have appointed the same arbitrator, have asserted the exact same arguments to justify their non-payment, any adverse outcome in the arbitration against National Casualty should cause Wausau to also pay -- either voluntarily or by reason of collateral estoppel.[9]

National Casualty irresponsibly accuses MRA of "attempting to go through the back door (the National Casualty case) what Judge Castel would not allow it to do through the front door in the disqualification action" (Resp. Mem. at 16). National Casualty is not asserting a claim for disqualification. It is not a party to that action. It has no alleged "Confidential Information" to protect. There is no relationship at all between the disqualification and its outcome and the obligation of National Casualty to proceed immediately with arbitration. Judge Castel has made at least one determination, and that is, that this action is not related to the disqualification action. If Judge Castel held the views that National Casualty attributes to him, he certainly had the ability to accept this case as "related" and taken any action he believed appropriate to prevent a "back door"

---

[9] The collateral estoppel effect of a prior arbitration on a pending arbitration is an issue for the arbitration panel. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84-85 (2002)("[I]ssues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, *estoppel,* and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."(emphasis added)).

challenge to his "determinations." Indeed, since these actions have been found by Judge Castel <u>not</u> to be related, it would seem that National Casualty is the one engaging in "back door" tactics by contending that there is a relationship between the two actions that justifies its refusal to proceed to arbitration.

Since the action before Judge Castel does not involve National Casualty, and National Casualty has no interest in the outcome of that action, National Casualty will not be prejudiced if it is ordered to proceed to arbitration before that action is concluded.  National Casualty has no legitimate interest that would be protected by staying the arbitration between it and MRA, nor will it suffer any prejudice if compelled to arbitrate now.  Thus, it has not demonstrated the "prejudice" it concedes must be shown in order to justify a stay under *Landis*.  A stay under the All Writs Act is equally unwarranted.  Judge Castel has not issued any orders that could be frustrated if National Casualty is forced to proceed to arbitration now.

National Casualty's discussion of the alleged prejudice <u>to Wausau</u>, and the alleged frustration of Judge Castel's purported orders <u>as to Wausau</u> are simply not relevant to whether <u>National Casualty</u> should be granted a stay of arbitration.

### POINT II

### THERE IS NO BASIS TO ENJOIN THIS LITI-<br>GATION OR THE UNDERLYING ARBITRATION

In order to demonstrate circumstances sufficiently dire so as to justify the drastic award of a preliminary injunction, the moving party must show:

12

a) that it is likely to suffer irreparable harm in the absence of the requested relief; and

b) a likelihood of success on the merits.

Ordinarily, the movant may, as an alternative to showing a likelihood of success on the merits, raise "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996). However, in a case such as the present matter, where "the moving party seeks to stay governmental action taken in the public interest or pursuant to a statutory or regulatory scheme" (*i.e.*, a stay of the Court's determination pursuant to the Federal Arbitration Act compelling National Casualty to go forward with the arbitration MRA has demanded), the 'serious questions' standard is not an option. *Id. See also Freedom Holdings, Inc., v. Spitzer*, 447 F.Supp.2d 230, 247 (S.D.N.Y. 2004). Instead, the movant must satisfy the more stringent likelihood-of-success standard. *See Plaza Health Laboratories, Inc., v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989) (Party seeking to enjoin Department of Social Security from acting in accordance with regulatory scheme, and suspending a provider from Medicaid participation when it has probable cause to do so, must show a probability of success on the merits.); *Freedom*, 447 F.Supp.2d at 247 (Party seeking to enjoin enforcement of the New York Escrow Statute and the New York Contraband Statute must satisfy heightened standard.).

The Second Circuit views a preliminary injunction as one of the most drastic tools available to a judge, a tool that should be used only in extraordinary circumstances. *See In re First Republic Group Realty, LLC*, 421 B.R. 659, 677 (Bankr. S.D.N.Y. 2009), *citing Hanson Trust, PLC, v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985). An injunction should be allowed only when the intervention

13

of the court is "essential to protect a party's property rights against injuries that would otherwise be irremediable." *Robins v. Zwirner*, 2010 WL 2035194, at *4 (S.D.N.Y. May 10, 2010), *citing Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999).

National Casualty has not and cannot satisfy either of the elements required for the drastic remedy of a preliminary injunction. Apart from citing a case which discusses the elements, National Casualty offers no judicial support for its request.

1.   **National Casualty Cannot Show Irreparable Harm If Compelled To Proceed To Arbitration**

"Irreparable harm" is defined as an injury for which a monetary award cannot be adequate compensation. Further, the injury must be imminent, neither remote nor speculative, and that the harm is likely if equitable relief is denied. *See Robins*, 2010 WL 2035194 at *5, *citing Register.com, Inc., v. Verio, Inc.,* 356 F.3d 393, 427 (2d Cir. 2004) and *Jackson Dairy, Inc., v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Pankos Diner Corp. v. Nassau County Legislature*, 321 F.Supp.2d 520, 524 (E.D.N.Y. 2003). *See also In re First Republic*, 421 B.R. at 678. "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Robins*, 2010 WL 2035194 at *5; *First Republic*, 421 B.R. at 678. Movant must first show an irreparable injury, and only then will the court consider the movant's likelihood of success on the merits. If movant cannot show an irreparable injury, the request for equitable injury must be denied. *See Bery*, 97 F.3d at 693; *First Republic*, 421 B.R. at 678. Examples of "irreparable injury" include: loss of a unique product or service, such as original artwork (*see Robins,* 2010 WL 2035194 at *5); loss of market share, because it "is difficult to quantify and represents the loss of an opportunity which may not be quickly or easily regained" (*Freedom*, 447 F.Supp.2d at 262-263); loss of medical or dental

14

care, but only if the loss is imminent (*see Donohue v. Paterson*, 2010 WL 2178749, at *5 (N.D.N.Y. May 28, 2010)); and violations of First Amendment rights (*see Bery*, 97 F.3d at 693).

National Casualty predicates its assertion of irreparable harm on the assertion that "the irreparable harm to National Casualty and Wausau is obvious" (Resp. Mem. at 19-20). The "harm" which is then discussed is alleged harm to <u>Wausau</u> -- which is neither a party to this action nor affected by its outcome. Indeed, National Casualty does not even attempt to demonstrate how it might even be "nicked" by an Order Compelling Arbitration, much less "irreparably harmed." Since National Casualty cannot satisfy the threshold for a preliminary injunction, the Court may deny National Casualty's petition without going further. Since National Casualty cannot demonstrate an irreparable injury, it is irrelevant whether it has a likelihood of success on the merits.

## 2.   National Casualty Does Not Even Attempt To Demonstrate Its Likelihood of Success

To support a request for a preliminary injunction, a party must show that it is likely to prevail on the merits of that which it is seeking to enjoin.   *See Donohue*, 2010 WL 2178749 at *3 ("In this Circuit, for a proponent to show a likelihood of success on the merits, that party must make a clear showing of probable success."); *citing Dopp v. Franklin Nat'l Bank,* 461 F.2d 873, 878 (2d Cir. 1972); *John E. Andrus Memorial, Inc., v. Daines,* 600 F.Supp.2d 563, 573 (S.D.N.Y. 2009) ("Typically, in order to establish a likelihood of success on the merits, the movant must show that its chance of prevailing is greater than fifty percent.), *citing Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir.1985). Here, National Casualty is seeking to enjoin MRA from proceeding with an arbitration. Consequently, it must show that National Casualty has a likelihood of success in preventing MRA from proceeding with its arbitration. *See J.P. Morgan Securities, Inc., v. Louisiana*

*Citizens Property Ins. Corp.*, 2010 WL 1790061, at *3 (S.D.N.Y. May 3, 2010) (In order to prevail in its request for a preliminary injunction to enjoin an arbitration, plaintiff had to demonstrate that it would be "likely to succeed in showing an absence of an agreement requiring arbitration of the dispute at issue.").

National Casualty cannot even attempt to make this demonstration because it concedes that the grounds to support a motion to compel arbitration exist. Instead, National Casualty makes the illogical -- and incorrect -- assertion that Wausau is likely to succeed in its disqualification action. A litigant, such as National Casualty here, must establish that it has a likelihood of success on the merits of the action. That a different entity may have a likelihood of success in prevailing on the merits of an unrelated action -- even if true -- is simply not an argument available to National Casualty. There is a serious disconnect here, which goes well beyond the bounds of good faith advocacy. The outcome of Wausau's disqualification action has no bearing upon or relationship to National Casualty's obligation to submit to the arbitration demanded by MRA.

A.    <u>**Likelihood Of Success In Wausau's Disqualification Action Is Remote**</u>

While no aspect of the disqualification action is a relevant topic of discussion in this action, MRA is compelled to provide a brief response.

Having been present at the June 28th Initial Conference for Judge Castel's skeptical questioning of Wausau's counsel -- the author of this motion for stay -- as to its basis for seeking disqualification, it is frankly unbelievable that National Casualty can advance its "likelihood of success" argument in good faith. It is, indeed, unfortunate that there is no transcript of those proceedings. Moreover, it would be totally contrary to prevailing law if Wausau were to prevail in its disqualification action.

The Second Circuit has set forth a 3-prong test which New York courts use to determine whether disqualification is appropriate. The test provides that disqualification is warranted if the movant can establish that:

i)   the moving party is a former client of the adverse party's counsel;

ii)  there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

iii) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant, privileged information in the course of his prior representation of the client.

*Leslie Dick Worldwide, Ltd. v. Soros*, 2009 WL 2190207, at *7 (S.D.N.Y. July 22, 2009), *citing Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).[10]

To satisfy the "substantial relationship" element of the 3-prong test, the party seeking disqualification must show that "the relationship between the issues in the prior and present cases is 'patently clear' and that the issues are 'identical' or 'essentially the same.'" *See Leslie*, 2009 WL 2190207 at *9, *citing Government of India*, 569 F.2d 737, 739-740 (2d Cir. 1973). *See also New York Marine & General Ins. Co. v. Tradeline (L.L.C.)*, 186 F.R.D. 317, 320 (S.D.N.Y. 1999) ("NYMGIC"). Specifically, "[i]t is the congruence of *factual* matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." *Revise*

---

[10] Wausau has, throughout the course of the *Wausau v Munich Re* matter, consistently relied on the New York Rules of Professional Responsibility as the basis for its claim for disqualification. This is the wrong standard. The Court derives its authority to consider Plaintiff's action to disqualify from its inherent power to preserve the integrity of the adversarial process and not from New York Code of Professional Conduct. *See Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). The Rules of the New York Code of Professional Responsibility "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* The appropriate standard is the one set forth in *Evans*.

*Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 2010 WL 638369, at *10 (S.D.N.Y. Feb. 1, 2010).

*See also Hickman v. Burlington Bio-Medical Corp.*, 371 F.Supp.2d 225, 230 (E.D.N.Y. 2005)

("Where, as here, the prior representation is limited to litigation, the issue is whether the material

facts in the prior litigation are the same as those involved in the present representation.")

Very few circumstances satisfy the "substantial relationship" test. The arbitrations at issue

in the *Wausau v Munich Re* matter have only one apparent factual similarity – they both concern

reinsurance. This is insufficient as a matter of law to establish a substantial relationship. *See Revise*,

2010 WL 638369 at *11; *Etna Products Co., Inc. v. Tactica Int'l, Inc.*, 234 F.Supp.2d 442, 445

(S.D.N.Y. 2002); *Commercial Union Ins. Co. v. Marco Int'l Corp.*, 75 F.Supp.2d 108, 112

(S.D.N.Y. 1999). In all other respects the two arbitrations are factually distinct – different contracts,

different underlying insureds, different types of claims – and concern different issues. As such, there

is no reasonable likelihood that Wausau can establish a substantial relationship. Moreover, the

allegedly relevant privileged information which Wausau asserted RFF obtained during its prior

representation of Wausau is, in fact, not relevant privileged information. Rather, it is classified as

"general litigation thinking" by the applicable case law, and is not considered by the court when

deciding a request to disqualify counsel. *See Revise*, 2010 WL 638369, at *11 ("Where the only

allegation of similarity is the attorney's alleged insight into the former client's general litigation

thinking, similarity is not established."); *Hickman*, 371 F.Supp.2d at 230; *Wieme v. Eastman Kodak

Co.*, 2004 WL 2271402, at *6 (W.D.N.Y. Sept. 7, 2004). *Vestron, Inc. v. National Geographic

Society*, 750 F.Supp. 586, 595 (S.D.N.Y. 1990) ("[I]f insight into a former client's general 'litigation

thinking' were to constitute 'relevant privileged information,' then disqualification would be

mandated in virtually every instance of successive representation. That is clearly not the law...").

18

These issues are addressed in more detail in Munich Re's Opposition to Wausau's Motion for

Protective Order, currently pending before Judge Castel. *See* Friedman Aff., Ex. 8, pp. 11-17.

## CONCLUSION

For the reasons set forth above, National Casualty has failed to demonstrate that it is entitled

to the relief requested in its Motion for Stay or Preliminary Injunction.

**WHEREFORE**, MRA respectfully requests that National Casualty's Motion be denied in

its entirety.

Dated: New York, New York
      October 4, 2010

                                      Respectfully submitted,
                                      RUBIN, FIORELLA & FRIEDMAN LLP

                                      By: _Bruce Fried_____
                                            Bruce M. Friedman, Esq.
                                            Crystal Monahan, Esq.
                                        292 Madison Avenue, 11th Floor
                                        New York, New York 10017
                                        Phone: 212-447-4644
                                        Fax: 212-953-2462