UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

MUNICH REINSURANCE AMERICA, INC.,

        Petitioner,

  -v-

NATIONAL CASUALTY COMPANY,

        Respondent.

------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO STAY THE LITIGATION/ ARBITRATION**

10 CV 5782

### NATIONAL CASUALTY COMPANY'S MEMORANDUM OF LAW IN REPLY TO MUNICH REINSURANCE AMERICA, INC.'S OPPOSITION TO NATIONAL CAUSALTY'S MOTION FOR A STAY OF THIS LITIGATION AND/OR UNDERLYING ARBITRATION, OR FOR AN ORDER ENJOINING MUNICH REINSURANCE AMERICA, INC. FROM PROCEEDING FURTHER IN ANY MANNER WITH RESPECT TO THIS LITIGATION AND/OR UNDERLYING ARBITRATION

Stacie L. Young, Esq.
Geri B. Horenstein, Esq.
Erin M. Perry, Esq.
Of Counsel

MARTIN CLEARWATER & BELL LLP
220 East 42nd Street
New York, New York 10017
(212) 697-3122
Attorneys for Respondent

Mark C. Kareken, Esq.
Lead Counsel

NATIONAL CASUALTY COMPANY
400 Westwood Drive
Wausau, Wisconsin 54402
(715) 843-8739
Attorney for Respondent

## TABLE OF CONTENTS

I.  **Preliminary Statement** ................................................................... 1

II. **Argument** ........................................................................................ 2

A.  **The Arbitration Cannot Be Compelled In Accordance With FAA Section 4 Because The Arbitration Agreement Requires That Wausau And National Casualty Both Be Parties To The Arbitration, And Wausau Is Not A Party To This Action** ............................................. 2

B.  **This Court Possesses The Authority To Stay The Litigation And/Or Arbitration, And National Casualty Has Demonstrated That A Stay Is Warranted** ............................................................. 4

C.  **National Casualty Has Met The Standards For Issuance Of An Injunction** ........................................................................... 7

III. **Conclusion** ..................................................................................... 9

Respondent, National Casualty Company ("National Casualty"), through its attorneys, submits this Memorandum of Law in Reply to Munich Reinsurance America, Inc.'s ("Munich Re") Opposition to National Casualty's motion seeking a stay of this litigation or underlying arbitration, or enjoining Munich Re from pursuing either. Based on the arguments and authorities expressed herein, and upon all of the files, records and proceedings in this litigation and S.D.N.Y. Case No. 10 CV 3558, National Casualty respectfully requests that this Court issue the requested stay or injunction.

## I.  Preliminary Statement

Munich Re's Opposition reveals that it does not comprehend the underlying facts of the present situation, or how the law applies to those facts. Regardless of whether this miscomprehension is intentional or feigned, it results in Munich Re's assertion that if this Court were to stay this litigation or arbitration, or enjoin Munich Re, it would be committing a grievous error. However, the only error is Munich Re's position, and the only mistake would be to deny National Casualty's motion.

In this litigation, there is one reinsurance contract, and one arbitration under that contract. With respect to this litigation, that one reinsurance contract indisputably involves three parties: Munich Re as reinsured, and National Casualty and Employers Insurance Company of Wausau ("Wausau") as reinsurers. Consequently, the arbitration which Munich Re seeks to compel and for which it seeks appointment of an umpire, undeniably involves the same three parties.[1]

Munich Re chose not to make Wausau a party to this litigation. However, Wausau is a party to an action pending in the Southern District of New York which involves the same reinsurance contract and arbitration Munich Re seeks to compel and have an umpire appointed

---

[1] The matter pending before Judge Castel involves two reinsurance contracts, the one between Munich Re, Wausau and National Casualty at issue herein, and a second to which only Munich Re and Wausau are parties.

for in this litigation. In exercising jurisdiction over the same reinsurance contract and arbitration at issue herein, Judge Castel refused to entertain Munich Re's request to bring a motion seeking the same relief Munich Re now seeks from this Court. In the event that this Court grants the relief sought by Munich Re, it would be circumventing the decision by Judge Castel declining to compel arbitration or appoint an umpire under the same reinsurance contract that applies to the arbitration now also before this Court. This, among other related reasons, warrants granting National Casualty's motion.

II.     **Argument**

    A.     **The Arbitration Cannot Be Compelled In Accordance With FAA Section 4 Because The Arbitration Agreement Requires That Wausau and National Casualty Both Be Parties To The Arbitration, And Wausau Is Not A Party To This Action.**

Munich Re erroneously attempts to focus the Court's attention on the general rule regarding compelling arbitration, i.e., (1) is there an agreement to arbitrate, and if so, (2) does the dispute come within the terms of that agreement. If so, it is statutorily mandated that the arbitration be compelled. However, the present situation is far from the typical scenario to which this general rule would apply.

On February 15, 1978, Munich Re and National Casualty executed a reinsurance contract - the Excess of Loss Reinsurance Contract No. 4575-0001, effective July 1, 1977 - with National Casualty initially accepting a 4% share.[2] On March 10, 1978, Munich Re executed the same reinsurance contract with Wausau, for an initial 2.5% share.[3] The Excess of Loss Reinsurance Contract No. 4575-0001 ("77-82 Treaty") was continuous until terminated.[4] National Casualty

---

[2] *See* Exhibit BB attached to the Further Declaration of Mark Kareken in Support of National Casualty's Motion to Stay/Enjoin, which is filed herewith and incorporated by reference.
[3] *See* Exhibit D to the September 20, 2010 Kareken Declaration (Docket Ent. 12, Document 6 at p. 27 of 52).
[4] *See* Exhibit D to the September 20, 2010 Kareken Declaration (Docket Ent. 12, Document 6 at p. 42 of 52, Article XXI) and Exhibit BB to the Further Declaration of Mark Kareken submitted herewith (Article XXI).

terminated its participation effective July 1, 1981,[5] and Wausau terminated its participation effective July 1, 1982.[6] Thereafter, Wausau signed on with Munich Re for participation on a new, separate and distinct reinsurance contract, known as the First Casualty Facultative Excess of Loss Contract No. 4575-0008, effective July 1, 1982 and terminated July 1, 1985 ("82-85 Treaty").[7]

The 77-82 Treaty contains an arbitration agreement to which Munich, National Casualty and Wausau are all parties. Paragraph (e) of that arbitration agreement is pertinent here and is set forth below:

> If more than one reinsurer is involved in the same dispute, **all such reinsurers shall constitute and act as one party for purposes of this clause** and communications shall be made by [Munich Re] to each of the reinsurers constituting the one party, provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Contract from several to joint[8] (emphasis added).

Munich Re is clearly of the belief that National Casualty and Wausau are reinsurers involved in the "same dispute." Thus, Article XIX ¶ (e) - by agreement of all three involved parties - requires that the arbitration Munich Re wants to pursue "shall" include "all such reinsurers," i.e., National Casualty and Wausau.

The mandate of Section 4 of the Federal Arbitration Act ("FAA") (9 U.S.C. § 4) to compel arbitration reads, in pertinent part, that: "the court shall make an order directing the **parties** to proceed to arbitration **in accordance with the terms of the agreement**" (emphasis

---

[5] *See* Exhibit BB to the Further Declaration of Mark Kareken.
[6] *See* Exhibit D to the September 20, 2010 Kareken Declaration (Docket Ent. 12, Document 6 at p. 2 of 52.)
[7] *See* Exhibit E to the September 20, 2010 Kareken Declaration (Docket Ent. 12, Document 7 at pp. 2 of 23 and 5 of 23).
[8] *See* Exhibit D to the September 20, 2010 Kareken Declaration (Docket Ent. 12, Document 6 at p. 41 of 52, Article XIX, ¶ (e)) and Exhibit BB to the Further Declaration of Mark Kareken submitted herewith (same Article and ¶).

added). Therefore, under the present circumstances, this Court is unable to make an order as delineated by Section 4.

Wausau is not a party to this action, and its participation in the arbitration demanded of it under the 77-82 Treaty is currently before Judge Castel. Regardless of how Munich Re chooses to characterize that matter to this Court, the simple fact remains that Judge Castel refused to entertain Munich Re's request to compel and appoint an umpire for the 77-82 Treaty arbitration - the same arbitration Munich Re now asks this Court to compel. Judge Castel's refusal was reasoned - he determined that Wausau's disqualification action stated a claim upon which relief could be granted. Consequently, allowing the 77-82 Treaty arbitration to proceed prior to the determination of whether RFF should be disqualified from representing Munich Re in that arbitration would be imprudent. *See Munich Reinsurance America, Inc. v. Ace Property & Casualty Ins. Co.*, 500 F. Supp.2d 272 (S.D.N.Y. 2007).[9]

### B. This Court Possesses The Authority To Stay The Litigation And/Or Arbitration And National Casualty Has Demonstrated That A Stay Is Warranted.

With regard to the requested stay, Munich Re's opposition focuses on the erroneous assertion that the Court does not possess the authority to stay the arbitration and wholly ignores the Court's inherent authority to stay any proceeding (litigation, arbitration or otherwise) under *Landis, et al. v. North American Co.*, 299 U.S. 248, 254-255 (1936).[10] Munich Re has not, and cannot, cite to any case which contradicts the authority conferred on this Court by *Landis*, nor can it argue that the authority conferred by *Landis* is inapplicable in this context - litigation over

---

[9] *Munich Re v. Ace* was an action commenced by Munich Re in this District to compel arbitration with Ace while an action by Ace to disqualify Munich Re's counsel was pending before a state court in Pennsylvania. Munich Re's action to compel was dismissed.
[10] The stay of the 77-82 Treaty arbitration sought herein by National Casualty should not be confused with the issue of whether the 77-82 Treaty arbitration should be consolidated with the 82-85 Treaty arbitration, as Munich Re attempts to do.

arbitration. In fact, Munich Re offers nothing to refute, let alone contest, that the application of *Landis* in this case warrants a stay of the litigation and/or arbitration. Moreover, and as cited by National Casualty, Second Circuit precedent provides the district courts with the authority to stay arbitration proceedings.[11] Munich Re has not, and cannot, cite to any contrary authority.[12]

Instead, Munich Re avoids the issue and misguides the Court by arguing that the arbitration cannot be stayed, pursuant to the All Writs Act. This argument is without merit. Here, Judge Castel has already declined to compel Wausau to proceed with the 77-82 Treaty arbitration - the arbitration to which National Casualty, by contract, is an indispensible party. Nonetheless, Munich Re now attempts to convince this Court to compel that arbitration, despite that it cannot. It is impossible to order arbitration in accordance with the terms of the parties' agreement when Wausau is not a party to this action. Should this Court grant Munich Re's petition to compel, it would frustrate Judge Castel's decision in properly exercising his jurisdiction in the *Wausau v. Munich Re* action.[13] It is difficult to imagine a clearer example of an instance in which a party – here, Munich Re - should be prevented from circumventing a prior decision – here, Judge Castel's decision - the All Writs Act.

---

[11] *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 (2d 1996), *abrogated on other grounds, Vaden v. Discover Bank*, 129 S. Ct. 1262 (2009); *Oppenheimer & Co., Inc. v. Deutsche Bank AG*, 09 Civ. 8154 (LAP), 2009 U.S. Dist. Lexis 117369 *5-8 (S.D.N.Y., Dec. 16, 2009); *United States v. Eberhard*, 03 Cr. 562 (RWS), 2004 U.S. Dist. Lexis 5029 *8-12 (S.D.N.Y., March 20, 2004); *Satcom International Group PLC. v. Orbcomm International Partners, L.P.*, 49 F. Supp.2d 331, 342 (S.D.N.Y. 1999); *Prudential Securities, Inc. v. American Capital Corp.*, 96-CV-440 (TJM), 1996 U.S. Dist. Lexis 7196 *12-14 (N.D.N.Y., May 15, 1996); *L.F. Rothschild & Co. v. Katz, et al.*, 702 F. Supp. 464, 467-468 (S.D.N.Y. 1988).

[12] *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59 (2d Cir. 1983) and *Scone Investments, L.P. v. American Third Market Corp.*, 992 F. Supp. 378 (S.D.N.Y. 1998), cited by Munich Re, are completely irrelevant to the issue of whether to stay this arbitration. *Prudential* addressed whether courts or arbitrators decide whether an arbitration demand is time barred. *Scone* involved compelling a principal to arbitrate under an agreement signed by its agent. Neither mention, let alone determine, whether a court can stay an arbitration.

[13] Munich Re misreads Chief Judge Preska's decision in *Oppenheimer & Co., Inc. v. Deutsche Bank AG*, 09 Civ. 8154, 2009 U.S. Dist. Lexis 117369 (S.D.N.Y., December 16, 2009). Chief Judge Preska correctly noted that the FAA divests district courts of jurisdiction over that which the parties have agreed to arbitrate, i.e. the court does not determine the merits of the parties' dispute. *Id.* at *9. However, Chief Judge Preska, however, also correctly noted that a district court possess the authority to stay an arbitration pursuant to the All Writs Act, even if Oppenheimer had not proven that such a stay was warranted in its case with Deutsche Bank. *Id.* at *10.

With no merit on which to base its opposition to the requested stay, Munich Re misleads the Court by discussing the consolidation of reinsurance arbitrations in an apparent attempt to distract from the real issue. However, as demonstrated above, this Court is unable to comply with the mandate of FAA Section 4, and this reality is irrelevant to Munich Re's discussion of consolidating arbitrations.[14] Moreover, Munich Re erroneously asserts that it would be improper for this Court to "interpret" the 77-82 Treaty arbitration agreement, i.e., to enforce Paragraph (e) of Article XIX. Clearly, this Court cannot reasonably be expected to enforce the arbitration agreement according to its terms without understanding its terms.

Equally incorrect and absurd is Munich Re's contention that it can unilaterally sever Wausau from the 77-82 Treaty arbitration and proceed solely against National Casualty. The 77-82 Treaty arbitration agreement, by its simple and unambiguous terms, gives Munich Re no such right and actually requires just the opposite. Irrelevant as it is to the issue of the stay, Munich Re's assertion is tantamount to asking this Court to rewrite the 77-82 Treaty arbitration agreement - something which the federal law of arbitration prohibits.[15]

Munich Re attempts to make much of the fact that Judge Castel declined to accept this action as "related" to the *Wausau v. Munich Re* case already pending before him. Rule 15 of the Rules for Division of Business among District Judges – Southern District, addresses Judge

---

[14] National Casualty does not dispute that whether the 77-82 and 82-85 arbitrations should be consolidated is an issue for the arbitrators, and not the courts. However, National Casualty disagreed with Munich Re's apparent belief that only one arbitration panel need be formed to decide the issue. National Casualty's view is that the separate contracts require separate panels, and if those separate panels determine that consolidation is appropriate, a consolidated proceeding will occur. Otherwise, the arbitrations should remain separate.

[15] *Volt Info. Sciences, Inc. v. Stanford Junior Univ.*, 489 U.S. 468, 474-475 (1989)("§ 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties']* agreement'")(emphasis in original); *Dean Witter Reynolds, Inc. v. Prouse*, 831 F. Supp. 328, 330 (S.D.N.Y. 1993)(citing *Merrill Lynch v. Georgiadas*, 903 F.2d 109, 113 (2d Cir. 1990)(quoting *Roney & Co. v. Goren*, 875 F.2d 1218 (6th Cir. 1989)("We may not rewrite the parties' agreement and compel arbitration of their dispute in a forum which is not one of those enumerated in the arbitration agreement's forum selection clause. 'When Congress enacted the Arbitration Act making arbitration agreements enforceable, it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to choose an arbitral forum more convenient or more suited to a party's particular needs'").

Castel's obligation to assess the "relatedness" of the two matters' and whether he should be assigned to this action.  Given this criteria, and because a finding of not "related" resulted in one arbitration (the 77-82 Treaty arbitration) pending before two judges - and Judge Castel having given no explanation for his decision - National Casualty cannot attempt to address the basis for that decision.  However, this Court should not consider Judge Castel's "relatedness" determination as a reason for denying National Casualty's request for a stay.  The fact remains that the 77-82 Treaty arbitration agreement mandates that the arbitration pursued by Munich Re may not proceed without Wausau and National Casualty.  The further fact remains that Judge Castel refused to consider Munich Re's request to file a motion to compel the 77-82 Treaty arbitration.  Finally, an order of this Court compelling National Casualty to arbitrate would contradict the express terms of the arbitration agreement and frustrate Judge Castel's decision not to allow the 77-82 Treaty arbitration to go forward.[16]

    C.    **National Casualty Has Met The Standards For Issuance Of An Injunction**.

Munich Re's arguments against National Casualty's request for an injunction are without merit.  Munich Re incorrectly asserts that National Casualty must prove irreparable harm and a likelihood of success on the merits, but that it is not entitled to use the "serious questions-balance of hardships" standard in place of the likelihood of success standard.

Munich Re cites *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996) and quotes that decision as saying that where "'the moving party seeks to stay governmental action taken in the public interest **or** pursuant to a statutory or regulatory scheme' the 'serious question' standard is not an option" (emphasis added).  Munich Re Opp. at p. 13.  However, Munich Re has

---

[16] While National Casualty is responding in kind, it wholly denies the improper motives which Munich Re ascribes to National Casualty's actions.  If Munich Re's primary motive was to resolve its payment disputes with National Casualty and Wausau, it would have replaced RFF, and the last six months could have been spent on the arbitrations.  It is Munich Re's insistence on using RFF that suggests that Munich Re chose RFF precisely because RFF's prior representation of Wausau gives Munich Re an unfair advantage.

significantly misquoted the Second Circuit's opinion. The Second Circuit actually held that: "[h]owever, in a case in which 'the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Id.* at 694. Clearly, Munich Re inappropriately added the word "or" between "public interest" and "pursuant to" creating the erroneous impression that compelling arbitration pursuant to the FAA is the equivalent of governmental action pursuant to a statutory scheme.[17]

As discussed in its opening memorandum, National Casualty would suffer irreparable harm were this Court to compel the 77-82 Treaty arbitration to proceed prior to the conclusion of the RFF disqualification case pending before Judge Castel. Munich Re has offered nothing to refute National Casualty's position.

Munich Re also misconstrues the likelihood of success standard in arguing that National Casualty must prove that it does not have to arbitrate with Munich Re. This is incorrect because this argument inappropriately disconnects the alleged irreparable harm from the likelihood of success. The irreparable harm to Wausau and National Casualty is that if the arbitration were to move forward, it would not be in accordance with the terms of the agreement, and would be before the determination of the RFF disqualification issue. The likelihood of success standard must necessarily follow the alleged harm, i.e., prevailing on the disqualification issue. Munich Re admits as much by devoting two and one-half pages in an attempt to convince this Court that

---

[17] Munich Re does not, and cannot, cite to a single case that equates judicial compulsion of arbitration with governmental action in the public interest pursuant to a statutory scheme. *Freedom Holdings, Inc. v. Spitzer*, 447 F. Supp.2d 230 (S.D.N.Y. 2004) and *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577 (2d Cir. 1989), as well as the authorities upon which they are based. *Union Carbide Agricultural Products Co. v. Costle*, 632 F.2d 1014 (2d Cir. 1980) and *Medical Society of New York v. Toia*, 560 F.2d 535 (2d Cir. 1977), all involve challenges to federal or state action that was based on statutory or regulatory authority.

disqualification will not be granted. National Casualty stands by its likelihood of success position as expressed in its opening memorandum.

Munich Re has opted not to address National Casualty's proof that it has fully satisfied its burden with respect to the "serious question-balance of hardships." Having made that conscious decision, Munich Re should not now be allowed to object.

### III.  Conclusion

There is a reinsurance contract between Munich Re, National Casualty and Wausau requiring that any dispute involving Munich Re and Wausau and National Casualty must be addressed in a single arbitration including both Wausau and National Casualty. Munich Re made a demand for arbitration under that reinsurance contract based on a dispute between it, Wausau and National Casualty. That same reinsurance contract - and questions concerning that same arbitration - are presently pending before another Judge of this District, who has refused to compel that arbitration to proceed or appoint an umpire therefor. Munich Re now asks this Court, in contravention of the express terms of the arbitration agreement found in the reinsurance contract, to do what Judge Castel refused - compel the same arbitration and to appoint an umpire therefor. National Casualty submits that this Court should neither disregard the simple and unambiguous terms of the arbitration agreement, nor the decision of another Judge of this District not to compel the arbitration to proceed. Under the circumstances, the appropriate

solution is for this Court to stay the litigation and/or arbitration, or enjoin Munich Re from proceeding with either until the disqualification litigation pending before Judge Castel has been finally determined.

Dated: New York, New York
October 12, 2010

          Respectfully submitted,

          NATIONAL CASUALTY COMPANY

          _____
          Stacie L. Young (SLY0573)
          Attorneys for Respondent
          220 East 42nd Street
          New York, New York 10017
          (212)843-8739

TO:    Rubin, Fiorella & Friedman LLP
        Attorneys for Petitioner
        292 Madison Avenue
        New York, NY 10017
        (212) 447-4644