UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MUNICH REINSURANCE AMERICA, INC.,           :
                                             :  10 Civ. 5782 (SHS)
                        Petitioner,          :
                                             :  OPINION & ORDER
            -against-                        :
                                             :
NATIONAL CASUALTY COMPANY,                   :
                                             :
                        Respondent.          :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Munich Reinsurance America, Inc., and National Casualty Corporation dispute whether National Casualty is obligated to pay claims Munich Re has made pursuant to a multiparty reinsurance treaty.  Munich Re and National Casualty agree that the treaty requires this dispute to be resolved in arbitration, but they differ on when and with whom arbitration may commence. Munich Re contends that a two-party arbitration between it and National Casualty should begin forthwith and has petitioned this Court pursuant to Sections 4 and 5 of the Federal Arbitration Act ("FAA") for an order 1) directing National Casualty to arbitrate and 2) appointing a neutral umpire to serve on the arbitration panel.  National Casualty maintains that arbitration requires the presence of another party to the reinsurance treaty, Employers Insurance Company of Wausau, and that arbitration cannot begin prior to the resolution of a lawsuit between Wausau and Munich Re.  National Casualty seeks an order enjoining arbitration between it and Munich Re.

      Specifically, the parties dispute whether the treaty's provision that the reinsurers "act as one party" in connection with arbitration permits Munich Re to initiate arbitration in the absence of Wausau.  The Court concludes that that issue is a procedural issue for the arbitrators to decide. The Court therefore grants Munich Re's petition to compel arbitration and denies National

Casualty's motion for an injunction. The Court also dismisses without prejudice Munich Re's petition for appointment of an umpire.

## I. BACKGROUND[1]

National Casualty – a Wisconsin corporation with its principal place of business in that state, (Pet. to Compel Arbitration ¶ 5) – is one of several companies providing reinsurance to Munich Re – a Delaware corporation with its principal place of business in New Jersey, (Ex. J) – pursuant to a reinsurance treaty covering the period from July 1, 1977 to July 1, 1982. (Ex. BB.) In October 2008, Munich Re submitted claims to each of its reinsurers under the treaty; the claim against National Casualty was for $133,000. (*See* Ex. F; Petr.'s Mem. in Opp. to Mot. to Stay at 3.) National Casualty refused to pay the claim made against it. (Ex. 2.) Another reinsurer, Wausau, also refused to pay the claim made against it. (*Id.*) On April 8, 2010, Munich Re served National Casualty and Wausau with a notice of arbitration. (*Id.*)

In pertinent part, the reinsurance treaty provides that "any dispute arising out of this Contract shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire." (Ex. BB art. XIX(a).) Each party appoints one arbitrator and the arbitrators in turn select the umpire. (*Id.* art. XIX(b).) The treaty's arbitration clause further provides that

> If more than one reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one party for purposes of this clause and communications shall be made by [Munich Re] to each of the reinsurers constituting the one party, provided, however, that nothing therein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Contract from several to joint.

(*Id.* art. XIX(e).) The Court hereafter refers to this as the "act-as-one" provision.

---

[1]   The parties' exhibits document the undisputed facts relevant to this matter. Exhibits A through AA are attached to the September 20, 2010 declaration of Mark C. Kareken, exhibits BB through FF are attached to the October 12, 2010 declaration of Mr. Kareken, exhibits 1 to 5 are attached to the July 30, 2010 affidavit of Bruce M. Friedman, and exhibits 1a through 7a refer to exhibits 1 through 7 attached to the October 4, 2010 affidavit of Mr. Friedman.

Munich Re selected the law firm of Rubin, Fiorella & Friedman ("RFF") as its counsel for the arbitration. (Ex. 2.) RFF previously represented Wausau in an unrelated reinsurance arbitration. (Ex. J.) Wausau maintains that RFF obtained confidential information about Wausau's arbitration strategies during that representation. As a result, Wausau has refused to submit to arbitration so long as RFF represents Munich Re. On April 28, 2010, Wausau filed in this district an action against Munich Re seeking disqualification of RFF as Munich Re's arbitration counsel. (*Id.*) That litigation was assigned to Judge Kevin Castel, and cross motions for summary judgment are currently pending before Judge Castel in that action. National Casualty is not a party to Wausau's disqualification action.

Notwithstanding the initiation of Wausau's suit, Wausau, National Casualty and Munich Re all proceeded to appoint arbitrators in the arbitration commenced by Munich Re. By way of separate letters, National Casualty and Wausau each appointed Spiro K. Bantis as their arbitrator. (Ex. 2a.) Munich Re appointed Andrew Manavel. (Ex. N.)

Manavel subsequently e-mailed Bantis about umpire selection. Manavel expressed his view that Wausau's disqualification action "does not relate to the claim(s) asserted by [Munich Re] in this arbitration against [National Casualty]" and suggested that he and Bantis commence with umpire selection. (Ex. W.) Bantis declined to pursue umpire selection. Invoking the treaty's act-as-one provision, Bantis stated that "it appears that National Casualty does not possess the right to select an umpire without Wausau and it is my understanding that Wausau declines to do so given the pending disqualification litigation." (Ex. X.) Bantis went on to state that "[b]arring an order of the court directing Wausau/National Casualty to do otherwise, I will be glad to complete the umpire selection process with you once the disqualification litigation is concluded." (*Id.*)

3

This conflict between the partisan arbitrators about the proper way to proceed has migrated to this Court.  Munich Re has petitioned to compel National Casualty into arbitration and for the court to appoint an umpire.  Munich Re adopts the position of its arbitrator, Manavel, that arbitration of its claims against National Casualty should proceed regardless of Wausau's absence from the proceedings.  National Casualty adopts the position of its arbitrator, Bantis, that the treaty prohibits arbitration in the absence of Wausau.  National Casualty has therefore cross-moved for an injunction preventing Munich Re from pursuing this litigation or arbitration until Wausau's disqualification action before Judge Castel is resolved.  This Court has jurisdiction over this matter pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1332(a).

## II. DISCUSSION

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  A court will generally grant a petition to compel arbitration if there is "a valid agreement or obligation to arbitrate" and "one party to the agreement has failed, neglected or refused to arbitrate." *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004) (internal quotation marks omitted).

Unlike most actions seeking to initiate arbitration, this case presents no dispute about whether an obligation to arbitrate exists.  Both parties recognize that Munich Re's claims against National Casualty will be resolved in arbitration.  The only question is whether that arbitration can proceed now with National Casualty as the lone respondent, or whether the proceedings must wait until Wausau's participation is secured.  In opposition to an order directing immediate commencement of arbitration and in support of its motion for an injunction, National Casualty

contends 1) that the treaty's act-as-one provision does not permit Munich Re to initiate arbitration in the absence of Wausau and 2) the commencement of arbitration in Wausau's absence will cause National Casualty to suffer irreparable harm.  The Court considers these arguments in turn.

    A. <u>Interpretation and application of the act-as-one provision is a question for the arbitrators</u>

The parties dispute how the treaty's act-as-one provision applies to the facts.  National Casualty argues that the provision requires Wausau to participate in the arbitration before the arbitration may proceed.  It follows, in National Casualty's view, that an order requiring it alone to commence arbitration with Munich Re would violate the act-as-one provision of the treaty.  Munich Re contends the act-as-one provision is designed to ease Munich Re's collection efforts and, as such, cannot be wielded to thwart its efforts to obtain prompt arbitration, as would result if National Casualty's request to stay the arbitration were granted.

The Court cannot proceed straight to the merits of this disagreement.  An antecedent issue is whether this disagreement over the application of the act-as-one provision should be resolved in court or in arbitration.  In general, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  The United States Court of Appeals for the Second Circuit has recently summarized the principles governing the allocation of authority between courts and arbitrators:

> The Supreme Court has distinguished between 'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other gateway matters, which are presumptively reserved for the arbitrator's resolution. 'Questions of arbitrability' is a term of art covering disputes about whether the parties are bound by a given arbitration clause as well as disagreements about whether an arbitration

5

> clause in a concededly binding contract applies to a particular type of controversy. Those issues should be decided by the courts unless there is *clear and unmistakable evidence* from the arbitration agreement that the parties intended that they be decided by the arbitrator. On the other hand, the phrase 'question of arbitrability' is *not* applicable where parties would likely expect that an arbitrator would decide the gateway matter. Thus procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.

*Republic of Ecuador v. Chevron Corp.*, --- F.3d ---, Nos. 10 Civ. 1020, 10 Civ. 1026, 2011 WL 905118, at *6 (2d Cir. Mar. 17, 2011) (citations, internal quotation marks and alterations omitted). Procedural issues that are presumptively for arbitral resolution are those in which "the relevant question [] is what *kind of arbitration proceeding* the parties agreed to." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality op.). Examples are "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (internal quotation marks and emphasis omitted).

Whether the interpretation and application of an act-as-one provision is a task for an arbitrator or court appears to be a question of first impression.[2] Munich Re contends that whether the act-as-one provision prohibits a separate arbitration against National Casualty is a procedural issue that should be resolved in arbitration. The Court agrees.

National Casualty's position is essentially that arbitration of its dispute with Munich Re must be consolidated with arbitration of Wausau's dispute with Munich Re. Numerous courts

---

[2] The few federal decisions implicating act-as-one provisions do not squarely decide the issue. In one case, a court in this district ordered arbitration of certain claims to be consolidated with an existing arbitration pursuant to an act-as-one provision without addressing whether the question was for the court or the arbitration panel. *See Bank of America, N.A. v. Diamond State Ins. Co.*, No. 01 Civ. 645, 2002 WL 31720328, at *4 (S.D.N.Y. Dec. 4, 2002). In a case before the Seventh Circuit, the parties did not contend that the application of the act-as-one provision was a task for the arbitrators. *See Conn. Gen. Life Ins. Co. v. Sun Life Assurance Co. of Canada*, 210 F.3d 771, 773 (7th Cir. 2000). In a third case, another federal district court ordered arbitration of an issue concerning the application of an act-as-one provision, but the posture of the case did not require the court to determine whether it could have resolved the issue itself. *See Aegis Sec. Ins. Co. v. Phila. Contributorship for the Ins. of Houses from Loss by Fire*, 416 F. Supp. 2d 303, 308 n.4 (M.D. Pa. 2005). Nevertheless, the latter court suggested in dicta that the application of the act-as-one provision was likely a procedural issue to be resolved in arbitration. *See id.* at 307.

have held that "whether [the parties] agreed to individualized or consolidated proceedings" is a matter of procedure to be resolved in arbitration. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 587 (3d Cir. 2007); *see Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 462, 476-77 (S.D.N.Y. 2010). Indeed, National Casualty concedes that consolidation is generally an issue to be ruled on by the arbitrators. (Respt.'s Reply in Supp. of Mot. to Stay ("Respt.'s Reply") at 6 n.14.) Although consolidation cases do not usually involve a contractual provision such as the one implicated here, that is not a meaningful difference. That a contractual provision may be relevant to determining the propriety of a consolidated or individual proceeding does not change the procedural nature of the issue; the issue still concerns "what *kind of arbitration proceeding* the parties agreed to." *Bazzle*, 539 U.S. at 452. As such, it is presumptively for the arbitrators to decide. *See id.* at 452-53; *Howsam*, 537 U.S. at 84-85.

Moreover, as Munich Re correctly observes, the treaty contains a broad arbitration clause covering "any dispute arising out of" the treaty, (Ex. BB art. XIX(a)). *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Emp'rs Reins. Corp.*, 919 F. Supp. 133, 135-36 (S.D.N.Y. 1996). This broad arbitration clause "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (internal quotation marks omitted). A provision requiring arbitration of "any dispute arising out of" the treaty is certainly susceptible to the interpretation that a disagreement about the purpose and application of the act-as-one provision is within its ambit. *See Aegis Sec. Ins. Co. v. Phila. Contributorship for the Ins. of Houses from Loss by Fire*, 416 F. Supp. 2d 303, 310 (M.D. Pa. 2005). The treaty's broad arbitration provision thus supplies a second reason to conclude that National Casualty's position is properly addressed to an arbitration panel.

National Casualty does not argue that the interpretation of the act-as-one provision is not a procedural matter and does not identify anything in the treaty rebutting the presumption of arbitral resolution of procedural matters.  Nor does National Casualty contest the breadth of the arbitration clause.  Instead, National Casualty contends that Section 4 of the FAA requires the Court to interpret and apply the act-as-one provision.  The Court is not convinced.

Section 4 of the FAA requires that a court order directing arbitration be "in accordance with the terms of the agreement."  9 U.S.C. § 4.  National Casualty urges that, in light of the act-as-one provision, any court order directing arbitration would be in "in accordance with the terms of the agreement" only if it ordered arbitration with Wausau present.  To accept this position would necessarily require the Court to apply the act-as-one provision, as National Casualty recognizes.  National Casualty, however, provides no authority interpreting the "in accordance" requirement of Section 4 as requiring a court to ensure adherence to contractual arbitration procedures.  Such a rule would run counter to the presumption that arbitrators decide whether procedural "conditions precedent to an obligation to arbitrate have been met."  *Howsam*, 537 U.S. at 85 (internal quotation marks omitted).  It would also contravene the case law applying Section 4, which clearly instructs that the court's role is "'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'"  *Jacobs*, 374 F.3d at 85 (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003)).

Nor is the Court persuaded that it should adopt National Casualty's position because it supposedly reflects the "simple and unambiguous terms" of the treaty.  (Respt.'s Reply at 6.)  Federal arbitration law simply does not permit judges to impinge on the arbitrators' role based on

the relative ease of a question of contractual construction.  *See Conticommodity Servs. Inc. v. Philipp & Lion*, 613 F.2d 1222, 1224-25 (2d Cir. 1980).

National Casualty has not rebutted the presumption that the treaty commits the construction and application of the act-as-one provision to the arbitration panel.  Accordingly, this Court concludes that the arbitration should proceed between Munich Re and National Casualty; National Casualty will be free to raise in that arbitration its position that the arbitration cannot proceed on the merits in the absence of Wausau.  This conclusion does not mean that the act-as-one provision is "meaningless," but rather that "the arbitrator, not the court, should determine [its] effect . . . on these facts."  *Conticommodity*, 613 F.2d at 1226.

### B.  National Casualty is not entitled to a preliminary injunction

National Casualty seeks a preliminary injunction prohibiting Munich Re from proceeding with either this action or arbitration until the resolution of Wausau's disqualification action.  To obtain a preliminary injunction, National Casualty bears the burden of demonstrating that "it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party."  *Mullins v. City of New York*, 626 F.3d 47, 52-53 (2d Cir. 2010).  National Casualty has not demonstrated either of the necessary conditions for preliminary injunctive relief.

National Casualty's claims of irreparable harm flow from RFF's presence as Munich Re's counsel and Wausau's absence in an ensuing arbitration.  RFF's representation of Munich Re, however, does not harm National Casualty, since RFF never represented National Casualty.  It is confidential information about *Wausau's* arbitration strategies, not *National Casualty's*

strategies, that RFF allegedly obtained.  As to Wausau's absence, National Casualty submits that that will prevent it from adhering to its alleged contractual obligation to act as one, thereby putting National Casualty in "conflict" with Wausau.  (Respt.'s Mem. in Supp. of Mot. to Stay at 17.)  But even if that were the case, irreparable harm requires an "actual and imminent" harm, *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009), and National Casualty fails to explain what actual and imminent harmful consequences it will suffer as a result of this supposed "conflict."  So far as the Court can speculate, National Casualty might incur additional costs and encounter certain inefficiencies in submitting to arbitration without Wausau, but these possible inconveniences do not constitute irreparable harm.  *See Oppenheimer & Co, Inc. v. Deutsche Bank AG*, No. 09 Civ. 8154, 2009 WL 4884158, at *5 (S.D.N.Y. Dec. 16, 2009).  Moreover, National Casualty will have the opportunity to argue to the arbitration panel what appropriate course it should take during the pendency of Wausau's disqualification litigation.  National Casualty may also have the ability to challenge a ruling on that subject in a subsequent lawsuit to vacate any adverse arbitration award.  These alternative remedies further undercut National Casualty's claim of irreparable injury.

Nor has National Casualty demonstrated a likelihood of success on the merits or the existence of a sufficiently serious question on the merits.  In attempting to satisfy this criterion, National Casualty relies entirely on the merits of Wausau's disqualification action.  National Casualty, however, may not obtain a preliminary injunction in this action on the basis of the merits of a different party's case in a different action.[3]

---

[3]    National Casualty alternatively argues that a stay of arbitration pursuant to the All Writs Act, 28 U.S.C. § 1651, is needed to preserve Judge Castel's jurisdiction over Wausau's disqualification action.  An All Writs Act stay is not warranted.  An order compelling National Casualty into arbitration in no way moots Wausau's disqualification action currently pending before Judge Castel.  Furthermore, although the parties dispute whether Judge Castel informally declined to permit Munich Re to move to compel *Wausau* to arbitrate, there is no indication that any such ruling Judge Castel may have made applies to *National Casualty*, which is not a party to the disqualification action.  Nor will this Court exercise its discretion to stay this litigation pending the conclusion of the

C.  <u>Munich Re is not entitled to the appointment of an umpire at this juncture</u>

Munich Re also seeks the appointment of a neutral umpire to serve on the arbitration panel. The treaty requires the arbitration board to consist of two party-appointed arbitrators and an umpire the two arbitrators select. (Ex. BB art. XIX(b).) "If the two arbitrators fail to agree upon the appointment of an umpire within four weeks after their nominations," the treaty provides that each "shall name three [potential umpires], of whom the other shall decline two and the decision shall be made by drawing lots." (*Id.*)

Although Munich Re and National Casualty have each nominated an arbitrator, no umpire has been selected. Munich Re has therefore moved for court appointment of an umpire pursuant to Section 5 of the FAA, which provides in pertinent part as follows:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; . . . if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require . . . .

9 U.S.C. § 5. Munich Re contends the Court should appoint an umpire because National Casualty has "fail[ed] to avail" itself of the umpire selection procedure and because there has been a "lapse" in naming an umpire. Though National Casualty does not specifically address Munich Re's request for that relief, the Court nevertheless finds that court-appointment of an umpire is not required at this juncture.

Section 5 "contemplates that the parties must follow the contractual procedure for arbitrator selection if such exists." *Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 814 F.2d 1324, 1327 (9th Cir. 1987). The circumstances here do not represent the kind of breakdown in

---

disqualification action, as National Casualty requests. The relevant interests – those of petitioner, respondent, the courts, persons not before the court, and the public, *see Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) – do not weigh in favor of a stay.

umpire selection that warrants this Court supplanting the parties' agreed upon selection method. *See In re Salomon Inc. S'holders' Derivative Litig.*, 68 F.3d 554, 560 (2d Cir. 1995) (a party does not forfeit the right to select arbitrators merely because it disputes whether arbitration should proceed at all). Spiro Bantis, National Casualty's arbitrator, did not refuse to comply with the umpire selection method prescribed in the treaty. Rather, he simply declined to initiate selection on account of his view that the act-as-one provision requires postponing umpire selection until Wausau's disqualification action concluded. (Ex. X.) In fact, Bantis specifically indicated that he would "complete the umpire selection process" in the event of a court order directing arbitration to proceed. (*Id.*) That eventuality has now come to pass and the Court presumes that Bantis and Manavel – the party-appointed arbitrators – will proceed with umpire selection in accordance with the treaty. Once an umpire is in place, the arbitration panel will be in a position to rule on any objections to arbitration National Casualty raises.

### III. CONCLUSION

For the reasons elaborated above, the Court grants Munich Re's petition insofar as it seeks to compel arbitration and dismisses it without prejudice insofar as it seeks appointment of an umpire, and denies National Casualty's motion for an injunction or stay.

Dated: New York, New York
April 26, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.